UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS (SHERMAN DIVISION)

MARIA DEL CARMEN GAMB
FERGUSON, individually,                    Case No. 4:20-cv-00097-ALM

              Plaintiff,

v.                                         Sherman, Texas
                                           February 24, 2023
LOCKHEED MARTIN CORPORATION,               1:56 p.m.

              Defendant.


TRANSCRIPT OF TELEPHONE CONFERENCE HEARING
BEFORE THE HONORABLE AMOS L. MAZZANT, III
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff:            Steven M. Shepard, Esq.
                              Floyd G. Short, Esq.
                              William J. Melsheimer, Esq.
                              Susman Godfrey, LLP
                              1301 Avenue of the Americas
                              32nd Floor
                              New York, NY 10019-6022

                              Samuel L. Boyd, Esq.
                              Catherine C. Jobe, Esq.
                              Boyd & Associates
                              6440 North Central Expressway
                              Suite 600
                              Dallas, TX 75206

                              Elvin E Smith, III, Esq.
                              Siebman Law
                              300 North Travis Street
                              Sherman, TX 75090-0070

                              Roger D Sanders, Esq.
                              Sanders, Motley, Young &
                              Gallardo, PLLC
                              111 S. Travis St.
                              Sherman, TX 75090

APPEARANCES (continued):

For the Defendant:                Patrick M. Hagan, Esq.
                                  Joe W. Harper, Esq.
                                  Chelsea Chalk, Esq.
                                  Dinsmore & Shohl, LLP
                                  255 East Fifth Street
                                  Suite 1900
                                  Cincinnati, OH 45243

                                  Anthony J. Campiti, Esq.
                                  Sara Babineaux, Esq.
                                  Holland & Knight, LLP
                                  1722 Routh Street, Suite 1500
                                  Dallas, TX 75201-2533

Court Recorder:                   TLS

Transcription Service:            Chris Hwang
                                  Abba Reporting
                                  PO Box 223282
                                  Chantilly, Virginia   20153
                                  (518) 302-6772

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**<u>INDEX</u>**

|                  | <u>Page</u> |
|------------------|------|
| Court's Ruling   | 22   |

(Call to order at 1:56 p.m.)

THE CLERK:  Good afternoon, this is Terry (phonetic) and we are in Judge Mazzant's courtroom this afternoon.  This telephone conference will be digitally recorded.  We do not have a court reporter present, so please speak very clearly, identify yourself before you speak.

And sometimes speakerphones interfere with our sound system.  So you -- if you could please take your phone off speaker, that would be much appreciated.  And then, if you do, just remember to unmute it when you speak.

So who do we have on the line for Plaintiff this afternoon?

MR. SHEPARD:  Good afternoon, Ms. Scott (phonetic), this is Steven Shepard with the law firm Susman Godfrey for the Plaintiff Relator.

THE CLERK:  Thank you.

MR. SHORT:  And good afternoon, this is also Floyd Short from Susman Godfrey also on behalf of the Relator.

THE CLERK:  Okay.

MR. MELSHEIMER:  And good afternoon, this is Jeff Melsheimer of Susman Godfrey also on behalf of Plaintiff Relator.

THE CLERK:  Okay.

MS. JOBE:  Good afternoon, this is Catherine Jobe also for Relator from Boyd & Associates.

THE CLERK:  Okay.

MR. BOYD:  This is Sam Boyd from Boyd & Associates for the Relator Plaintiff.

THE CLERK:  Yes, sir.

MR. SMITH:  Also Elvin Smith from Siebman Law for the Relator.

THE CLERK:  Okay.  Anyone else for Relator?

Okay, for Defendant Lockheed Martin?

MR. HAGAN:  Good afternoon, Patrick Hagan at Dinsmore & Shohl for Lockheed Martin.

THE CLERK:  Okay.

MR. HARPER:  Good afternoon, Joe Harper, also Dinsmore & Shohl for Lockheed Martin.

THE CLERK:  Yes, sir.

MS. CHALK:  And this is Chelsea Chalk from Dinsmore & Shohl with Lockheed Martin.

THE CLERK:  Okay.  And did someone just join the call?

MR. SANDERS:  Yes, Terry, this is Roger Sanders.

THE CLERK:  Yes, sir, good afternoon.

MR. SANDERS:  Good afternoon.

MR. CAMPITI:  Hi, Terry, you also have Tony Campiti from Holland & Knight on behalf of Defendant Lockheed Martin.

THE CLERK:  Okay.

MS. BABINEAUX:  Hey, Terry, it's also Sara Babineaux

from Holland & Knight.

THE CLERK:  Okay, well, it looks to me like we are only missing Mr. Shackelford for Relator and Mr. Bronson for Lockheed Martin.  So if they join the call, that will be just fine.

And I guess there's no one on the line for the Government, correct?  I noticed they did decline -- the Government did decline to intervene.

Okay, Judge Mazzant will be with us shortly.

(The Judge joins the conference)

THE COURT:  Okay, good afternoon, this is Judge Mazzant.  And we're here in case 420-CV-97.  Everyone has already made their appearances.

And, again, I'll just remind everyone that you all know the drill.  Just identify yourself every time you speak.  We are digitally recording this today and the court reporter is out.

And I know there's an issue regarding -- I know there's a pending motion to stay and there's an impasse regarding I think preparing for the -- doing the 26(f) report.

So I'm not sure who would like to go first.  And I'll give each side the ability to say their piece about where we're at and what the Court can do to help.

MR. SHEPARD:  Thank you, Your Honor.  This is Steven Shepard of Susman Godfrey for the Plaintiff Relator.  We

requested the Court's conference.  Thank you for your time this afternoon.

This is a False Claims Act case.  I represent the Relator, a former Lockheed Martin employee, who discovered the fraud while auditing Lockheed Martin's subcontractors.

The issue today for Your Honor is we've not been able to get Lockheed Martin to participate in the Rule 26(f) conference or to make the initial disclosures required by Your Honor's standing order and the local rules.

There have been two reasons given for that.  First, Lockheed Martin points to its pending motion to transfer or dismiss the case.

Second, Lockheed Martin has pointed to a confidentiality provision contained in its contracts with the Department of Defense.

And I earlier today sent an email with an excerpt of that confidentiality provision that Lockheed Martin provided to us.  I sent that to Ms. Scott earlier today.

Turning to the 26(f) conference first, it's our position that this confidentiality provision shouldn't bar Lockheed Martin from participating in a Rule 26(f) conference and discussing the matters that are required to be discussed under the Court's standing order and relating to the -- and also relating to the schedule going forward.

Turning to the second point, which are the initial

disclosures required not only by 26(a), but by this Court's standing order, it is correct that this provision, if applicable, would prevent Lockheed Martin from producing documents in its initial disclosures.

The confidentiality provision, however, merely requires prior written approval from the Department of Defense. And we, as the Relator, are perfectly willing to work with Lockheed Martin for some hopefully brief period of time to obtain prior written approval from the Department of Defense.

Earlier this week, counsel for Lockheed Martin finally got on the phone with us to discuss how we should go about doing that.

I think speaking for just the parties, we're all cautiously optimistic that the Department of Defense will grant approval, provided there's an adequate confidentiality order in place.

I think it would be appropriate for a modest extension of the initial disclosure deadline in order to work to get that approval from the Department of Defense.

But on behalf of Relator, we've requested two things that so far Lockheed Martin hasn't agreed to regarding that Department of Defense approval.

First, we'd ask that we as counsel for the Relator be included in any technical discussions that may be necessary with the Department of Defense.

And by that, Your Honor, I mean, if we get to the level of what the confidentiality order says, what's required or how the documents are to be stored, it would eliminate the game of telephone if all three relevant parties, us including counsel for Relator, were to be involved in those discussions.

And second and perhaps more important, Your Honor, we'd appreciate if the Court would set a fairly firm deadline for this work to be done by which the parties would either submit to Your Honor a confidentiality order that everyone agrees to.

Or if we're not able to agree, that we would present Your Honor with what we have agreed to and then the positions on which there's still disagreement. And I'd ask that that be done within the next 30 days.

THE COURT: Anything else before I call upon a response?

MR. SHEPARD: That's our position, Your Honor. Thank you.

THE COURT: Okay, response?

MR. HAGAN: Good afternoon, Judge Mazzant. This is Patrick Hagan at Dinsmore & Shohl for Lockheed Martin. I'll briefly touch on three issues.

The background on our motion to stay or modify the schedule, a little bit of background on the contractual provision at issue, and then an update on the nature of the

dispute and our position.

First, we'd move to stay because this case is unlike many other cases.  This is not a motion based on a pleading argument.

Our motion to stay identifies the motion to transfer and the subject matter jurisdiction issue under the False Claims Act for us to file bar, both of which get to the heart of whether it's appropriate for this Court to adjudicate this case.  And we believe those issues are unique and we have very strong arguments and that that merits a stay in the case.

Nevertheless, we have been engaging with Relator's counsel throughout this year to discuss a process to address the disclosure of information clause, that contractual provision that Relator's counsel emailed to the Court.

And you take a look at that, the background on this clause is there's a regulation in the Defense procurement regulation that instructs contracting officers to include that clause when the program may touch on sensitive unclassified information.

And here, Relator's complaint identifies four government programs, the F-35, F-22, F-16, and C-130.  So four military aircraft programs.

And in particular, F-22 and F-35 are the most technologically advanced fighters.  So all of these programs implicate that restriction.

And you have the clause in front of you that Relator's counsel mailed, this is a clause from one of the F-35 contracts.  And in subsection (a), you can see the breadth of it there.  It applies to any information regardless of medium.

And I point out the example that follows any information, the example given in the clause is announcement of a contract award, because that informs our position that we cannot engage in a normal 26(f) discussion.

So the concept that a contractor cannot release to the public the award of the contract indicates the breadth of how the Department of Defense has interpreted this clause because DOD as a matter of course generally announces contract awards, but this example indicates that DOD wants control over that.

And so in the last -- the program approves the contractor making the announcement or DOD announces it first, they don't even want that basic unsensitive information released into the public.

And so, in other litigation and in this one, we have interpreted that clause, you know, consistent with the broad example provided that we cannot disclose program information unless and until we get government approval.

And particularly given some issues related to another case, the Davis case, which we identified in our motion to stay, we are trying to be upfront with the Government about

this and try to address any concerns on the front end before any information goes out through the discovery process.

I mention the Davis case and we mentioned in our motion because it was another False Claims Act case involving the F-35 program and the same counsel. Mr. Boyd and Susman Godfrey representing a different Relator and our group representing Lockheed Martin.

There, that was a case in the Northern District of Texas. The information at issue related to the F-35's computer code. Obviously, a highly sensitive area.

And in that case, discovery was suspended for a lengthy period of time to allow the Department of Defense to do pre-production document review before Lockheed Martin could provide documents to the Relator, DOD insisted on reviewing them.

That is a process I think all of us would very, very much like to avoid in this case with a goal of getting to a waiver from DOD that would allow us to litigate this case as close to a normal case as possible without any restrictions subject to a protective order.

On that issue, on the Court issue, from Lockheed Martin's perspective, we really don't think there's much of a dispute.

We have engaged with Relator's counsel on the process. I've spoken with Mr. Shepard earlier today to give

him the initial feedback we've received from each of the government programs.

Our goal is to secure a program specific waiver. So as drafted, the clause requires contract specific approval. Because this case potentially implicates a number of prime contracts, we'd like to avoid that process if at all possible and reduce the burden on the government by essentially getting a waiver that says for this program for this litigation, you know, we can use the information in the litigation consistent with the protective order. I think we're all on the same page about that.

And our discussions with Relator's counsel have centered on their proposal to include a number of prescriptive provisions in an agreed order that would require Lockheed Martin to take certain steps at certain times and provide short deadlines.

My concern there is just tying our hands in the flexibility of negotiating this process with the government with DOD.

From what I heard from Relator's counsel today, I think the issues have been substantially narrowed there. I don't have an objection to including them in technical discussions.

I have reached out to AUSA Gillingham and secured his approval to allow the litigating counsel in this case to speak

directly with DOD personnel to the extent there are questions about the waiver process, where they need information relating to the protective order or the litigation.

And if we get to that point, Mr. Gillingham said he would make himself available to join as well if that would be helpful.

My reservation to an order or a blanket agreement that they shall be included in any discussion is just to provide us the flexibility to work this through the normal business relationship, the contractual relationship, so that we're not inserting a bunch of outside lawyers into the process unless the government says that would be helpful.

In terms of deadlines, I think, you know, from our perspective, Lockheed Martin's proposal would be to have the parties report back in 30 days.  And we can advise the Court on where we stand.

Hopefully, we will have a waiver or will be very close.  If we're not, we can identify the roadblocks, any areas of disagreement, and get back together with the Court and raise those issues for your consideration.

I think that's it from my perspective, Judge, unless you have a question.

THE COURT:  Well, I don't have a question, but I'll just kind of give a general statement.  And this may not come as a surprise to the parties of the Court's general view that

as to the issue of a stay, although the stay motion is not ripe yet before the Court, the Court is typically and my general practice is not stay because the pending motion to dismiss or transfer.  So don't be surprised if once the motion's ripe, that motion is generally denied.

But as to the issue -- this is a unique case.  So knowing that my idea is discovery and everything should still proceed, let me ask from Defense what do you -- is your view the best way to proceed is to see if you can see -- obtain a waiver in the next 30 days and then come back another conference call is what you're proposing?

And let me ask Mr. Hagan, too, is there no way to participate in a 26(f) conference if you report and just -- is there any way to complete that without getting the documents and things like that you need in a waiver you need?

MR. HAGAN:  So my concerns on completing the 26(f) process are two-fold.  We -- I have represented to Relator's counsel that we'll engage with them on what we can engage on.  And I'll reiterate that for the Court.

You know, we are discussing a confidentiality protocol, protective order, a production protocol, a 502(d) order, you know, all of which are aspects of that 26(f) process.

My concern is a substantive discussion on where information resides, which is generally something the parties

would talk through at a 26(f) conference because that would implicate program information where -- how Lockheed Martin maintains information related to this program and the interaction between Lockheed Martin and the Government on that program. That is the piece I don't think we can engage in until we get approval from DOD.

And then, my other concern related to completing the 26(f) process is the instruction in the Court's standing order, I think it's paragraph 6 of the portion addressing the Rule 26(f) conference, that says now is the time to advise the Court of special complexities.

And I don't think we can meaningfully do that until we understand how DOD is going to react to this waiver request and whether they're going to impose any restrictions that might materially delay or impact the litigation that we need to flag for you before you enter a scheduling order.

THE COURT: Okay, and then, let me just add again, you know, the Court's general view on not staying discovery and the case proceeding, even though there might be a motion to transfer venue, anything that happens in this case, even if all the cases transferred or dismiss for whatever reason, none of this is a waste in terms of whether it's done here in the other district.

Let me hear from the Relator comments on or response to what Defense counsel's indicating?

MR. SHEPARD:  Thank you.  Your Honor, this is Steven Shephard again.  In speaking about this contractual provision, Mr. Hagan used the phrase "information released into the public" and the concern that information -- any information not be released into the public.

Your Honor, frankly, that is not going to happen in a Rule 26(f) conference.  It's our position that we should be able to discuss all of the 26(f) matters, including the location of documents, witnesses, custodial sources, everything.

And I'm happy to represent to the Court that me and my colleagues on the phone, all of whom are officers of the Court, representing a Relator who's acting on behalf of the United States, that we have no intention of releasing any information into the public.

What we are doing is complying with a court order and Rule 26(f), which requires us to move forward with discovery. The 26(f) conference is, of course, also key to other dates, like the date on which I can begin serving subpoenas on third-parties.

We want to move forward and we would welcome a preliminary court order that bars me and my client from releasing any information learned in the 26(f) conference to the public.

Again, that is not our intent here.  We want to move

forward with discovery.  And I am confident that we can find a way to do so and get the Rule 26(f) conference done with a simple order from the Court, making clear what I think we all agree up to, which is that none of this is going to be publicly released.

Turning to the initial disclosures, the production of documents that are required, I'm happy to hear Mr. Hagan agree on 30 days being a reasonable time to revert to the Court.

I would welcome an order to that effect and a direction that if we still don't have a waiver or agreement from the Department of Defense that we either have another status conference with the Court or if there are areas of disagreement where the meet and confer process has broken down, that we provide Your Honor with brief or simultaneous written submissions about what we've agreed to do and what we haven't, so that we can make that process as efficient as possible.

MR. HAGAN:  Your Honor, Patrick Hagan.  Can I respond briefly to Mr. Shepard's first point?

THE COURT:  Yes.

MR. HAGAN:  So I apologize if my language was imprecise when I referred to the public.  If the Court can refer to that email with the clause, the actual wording of the clause prohibits the contractor from releasing information to anyone outside the contractor's organization unless it's going to a subcontractor or vendor working on the F-35 program.

And so, that would exclude disclosing information to Mr. Shepard or any of the other counsel who are on the phone based on the plain language of the clause.

Again, I have no conceptual objection to third-party discovery, but it all leads back to the same place at least with respect to subcontractors.

In that same clause, subsection (d) requires Lockheed Martin to flow the same restriction down to its subcontractors. So any request for information to subs is going to implicate the same process.

And, again, our goal is to address this up front with a blanket waiver from the department to allow us to litigate the case as normally as we can.

MR. BOYD:  Your Honor, this is Sam Boyd.  I was a counsel in the Davis case before.  And in just for the purpose of background, there was never a charge of any violation of the confidentiality order in that case ever.  So we have a pretty good track record.

Number two, yes, we all prefer that the government come in and raise other issues, so that we can move forward.

Number three, I think it's important the Court know that this position that nothing can be released should probably be somewhat taken with a grain of salt.

All these programs have Facebook sites.  I've been on the Internet.  I know who their program officers are.  They

list the officers and their positions.  This is all in the public.  So the idea that nothing is disclosed might go a little far.

And what we really need from third-party discovery quite frankly is there's a person called the program contract officer at the top of every program.  And that person is responsible for receiving and approving all of the certifications that are at the heart of this case.

And we just want to make sure where that person's located.  And for -- that just a for instance.  So we have four programs here.  There are going to be four PCOs.  And there are deputies CPOS -- PCOs that can also get this testimony.

But they can confirm for a fact finder and for everybody that the data is located with them.  With one exception of Fort Worth for the F-35, the other programs do not have their data libraries in Fort Worth.

So there are a lot of statements in this transfer motion that might make a person think that everything's sitting over in the Northern District of Texas, when quite frankly, very little is because the six subcontractors that are the focus of the improper team of certifications, they're mostly overseas except for one Kirkland, I believe, is in California.

We know all this stuff because our client does, but also, it's in the public domain.  So I just wanted to leaven the conversation or the discussion with you with the fact that

it's no so tight.

And if the Court had a (indiscernible) go on the Google after the hearing, you'll see all kinds of stuff about these programs, and what they do, a lot of technical issues, too.  So that's all I really wanted to say to the Court.

And the third-party discovery that'd be really helpful, I can say that we've been working with JPO over the last year to get definitions of documents and all well before these lawyers for Lockheed became involved with this part of it.

And JPO knows what we want.  And we have provided them a document request and they know exactly what we need to prove our case.

So our third party would be a subpoena process of some sort using 2(e) arms and legs to get the Government to give us the information that we need.

So that kind of third-party's not a subcontractor.  And of course, the Government can readily defend itself, but we have a good track record in following the court orders.

We also would not dare desire to go into anything that's not -- that would be published.

And number three, the Government is a great source and the Government couldn't hold anybody accountable for what it disclosed.  And that's all I wanted to present to the Court and I thank you for your time.  Sam Boyd.

THE COURT: Okay. Thank you. Anything else from anybody?

MR. SMITH: Your Honor, Elvin Smith real quick. Also for the Relator, we just want to make sure the case moves forward and Your Honor seemed willing to potentially accept reconvening in 30 days for an update on the waiver issue.

And I would suggest that in interest of keeping the case moving forward, the parties could still submit a scheduling order to the Court -- proposed scheduling order to the Court on the 3rd with dates.

And the primary opposition to that is the effect that obtaining the waiver may or may not have on that. Well, if the schedule needed to be adjusted in 30 days because of delays with the waiver, it could be brought up and adjusted at the time of that next status conference update, but we would still have guidelines and guard rails for moving the case forward in the interim in the event the waiver took place sooner and those dates did need to be adjusted.

THE COURT: Okay, anything else from anybody? Okay, so here's the Court's view of the matter is as to the issue of having the 26(f) meeting and filing a 26(f) report, I do think that can be done and should be done within the next 14 days.

I understand that there's some things that are probably in the public sphere that can be disclosed in the 26(f) report, but I also understand until a waiver's obtained,

there may be things that can not be.  And so, the 26(f) report may have to be updated, but I don't see any reason why we can not get this on a schedule.

I do understand there's other implications until we  -- a waiver is obtained in terms of maybe document production or some of the things that can be answered or in detail in the 26(f) report, but I don't see any reason why we shouldn't get this on a scheduling order to get entered.  And then, we may have to adjust things as we go.

As to the issue of the waiver, I'm not going to reconvene in 30 days, but I would order the Defense try to obtain the waiver in the next 30 days and report back to the parties and the Court.

If we need another telephone conference, then just indicate to do so and the Court will schedule that.

And then, third, I will allow third-party discovery to begin.  There may be other limitations.  As Mr. Hagan pointed out, the subcontractors will be under the similar restrictions.

And as Mr. Hagan pointed out, look at the language. I have no doubt that the Relator's counsel would keep everything private subject to a protective order.  I have no concerns about that.

But in terms of the way the information is listed in subparagraph (a), they're not allowed to release any

information outside the contractor's organization.

So because of that restriction, it's not a matter of trust of Relator's counsel, which I don't think there'd be an issue there.

So I understand that I want to -- I do want things to proceed.  I will, you know, resolve the motion to stay officially once it's a response, but I think everyone can understand where the Court is going and the Court's general philosophy.

I do fully understand that we may have to adjust things, especially if the waiver's not obtained.  It sounds positive that Defense counsel's working with Plaintiff counsel to try to include them in some maybe that process with the Department of Defense.

So let me ask for the Relators, does that at least appease you from this standpoint or something else you're asking the Court to do?

MR. SHEPARD:  Yes, this is Steven Shepard.  Thank you very much, Your Honor.  We understand that the 26(f) process should move forward to the greatest extent possible.

And that we should file a 26(f) report within 14 days of today with the understanding that it may need to be updated in future if there's information that can't be disclosed before that time and then only becomes available after the waiver.

THE COURT:  Correct, because --

MR. SHEPARD:  I will --

THE COURT:  I'm not ordering -- I'm not ordering the Defense to produce documents in violation of this agreement at this stage.

The -- I don't even know that I have that authority. So I'm not doing that.  So I understand there may be gaps that are in what Defense can actually show or produce at this time.

So we're recognizing those.  Those may be issues for a later date, but hopefully we won't have to go down any of that path so.

MR. SHEPARD:  Thank you for the clarification, Your Honor, Steven Shepard again.  Your prior order in this case also set the preliminary joint management conference for a date certain.

Would it make sense, Your Honor, after the waiver process is complete for us to then re-engage by email with the Court to set a new date for that in-person conference?  Or would Your Honor like to proceed with it now, based on what we're able to get?

THE COURT:  I think it's better to wait till later until we see what happens, so we can decide that point whether we need one or not.

MR. SHEPARD:  Very good, Your Honor, thank you.

Does anyone else from the Relator's side have questions or comments?

THE COURT:  Okay, thank you.  And Mr. Hagan, from the Defense, anything else I can do for you today, any questions or clarifications of where we're going from here?

MR. HAGAN:  No, Your Honor, Patrick Hagan.  We appreciate the Court's time and consideration and we'll continue to work on a waiver and cooperate with Relator's counsel as much as possible.

THE COURT:  Very well.  And then, for the Relators, I would ask that if you would prepare a proposed order of the Court's rulings, I will get that order entered, so it's documented.  Normally, I don't enter an order unless the parties ask for it, but I'll just -- I'll be very candid.  The Court's really busy right now with our six-month list and then I'm in trial next week.

So if you want an order, submit one to the Court.  If you don't want one, that's fine, but if you want one, just submit that to the Court after showing the other side.

And then --

MR. HAGAN:  Yes, Your Honor.

THE COURT:  Okay, well, it sounds like --

MR. HAGAN:  Yes, Your Honor.

THE COURT:  -- we have a path forward.  It's, you know, again, my general belief is we have to keep cases moving.

I understand that I'll eventually have to resolve this motion to transfer, but none of this is in vain.  Keeping

the case moving, whether I keep it or it goes to Northern District, this is all information to keep the case moving in an orderly fashion, so.

And then, let me know if I can do anything further and it sounds like we may be talking again in 30 days, but hopefully, the waiver process will go smoothly and we can get the case moving ahead at least at this point.

And if there's anything else I can do, let me know. And you all have a good weekend.  Thank you.

UNIDENTIFIED SPEAKER:  Thank you.

UNIDENTIFIED SPEAKER:  Thank you very much, Your Honor.

UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

UNIDENTIFIED SPEAKER:  Thank you.

(Proceedings concluded at 2:32 p.m.)

**CERTIFICATE**


          I, Chris Hwang, court approved transcriber, certify

that the foregoing is a correct transcript from the official

electronic sound recording of the proceedings in the above-

entitled matter.


_____          March 30, 2023

Chris Hwang                        Date

Court Reporter