### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MARIA DEL CARMEN GAMBOA FERGUSON,<br><br>    *Plaintiff/Relator*,<br><br>    v.<br><br>LOCKHEED MARTIN CORPORATION<br><br>    *Defendant*. | Civil Action No.: 4:24-cv-00025-O<br><br>JURY TRIAL DEMANDED |

### RELATOR'S BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS IDENTIFIED AS PRIVILEGED BY DEFENDANT

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND.....................................................................................................................2

III. LEGAL STANDARD............................................................................................................5

IV. ARGUMENT.........................................................................................................................6

      A.      Relator was not seeking legal advice. ....................................................................7

            1.      Relator reported the fraud in an attempt to reform Lockheed's
                    practices, not to seek legal advice..............................................................7

            2.      Relator addressed many of the communications to non-lawyers...............14

      B.      The post-November 2017 emails identified by Lockheed were not
              confidential because Relator was a known litigation adversary. ...........................16

      C.      Lockheed waived its privilege. .............................................................................18

            1.      Lockheed's voluntary disclosure to Relator means it waived its
                    privilege. ...................................................................................................19

            2.      Lockheed's delay in asserting privilege constitutes waiver.......................20

      D.      A finding that these documents are privileged would effectively gut the
              *qui tam* provision of the False Claims Act............................................................21

V. CONCLUSION .....................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AHF Community Development, LLC. V. City of Dallas*,
258 F.R.D. 143 (N.D. Tex. Feb. 12, 2009) ...............................................................................18

*Alldread v. City of Grenada*,
988 F.2d 1425 (5th Cir.1993) ..................................................................................................19

*Apex Mun. Fund v. N-Group Securities*,
841 F.Supp. 1423 (S.D. Tex. Oct. 28, 1993) ...........................................................................21

*Connor v. Deckinga*,
No. 4:10-CV-00855-Y, 2012 WL 13020346 (N.D. Tex. Sept. 28, 2012) ...............................21

*EEOC v. BDO USA, L.L.P.*,
876 F.3d 690 (5th Cir. 2017) ................................................................................................5, 7

*Fisher v. United States*,
425 U.S. 391 (1976)....................................................................................................................7

*In re Avantel, S.A.*,
343 F.3d 311 (5th Cir. 2003) ...................................................................................................15

*In re E.E.O.C.*,
207 F. App'x 426 (5th Cir. 2006) ..............................................................................................6

*in re Fine*,
641 F.2d 199 (5th Cir. 1981) .....................................................................................................6

*In re Vioxx Products Liability Litigation*,
501 F.Supp.2d 789 (E.D. La. Aug. 14, 2007) .........................................................................14

*Medina v. Buther*,
No. 15-CV-1955, 2018 WL 4383098 (S.D.N.Y. Aug. 22, 2018)............................................14

*Navigant Consulting, Inc. v. Wilkinson*,
220 F.R.D. 467 (N.D. Tex. Mar. 29, 2004) ................................................................8, 11, 23

*Nguyen v. Excel Corp.*,
197 F.3d 200 (5th Cir.1999) ....................................................................................................19

*Perkins v. Gregg County*,
891 F.Supp. 361 (E.D. Tex. 1995)...........................................................................................23

*Robertson v. Bell Helicopter Textron, Inc.*,
  32 F.3d 948 (5th Cir.1994) ...................................................................................22

*S.E.C. v. Brady*,
  238 F.R.D. 429 (N.D. Tex. Oct. 16, 2006) ...............................................................19

*S.E.C. v. Microtune, Inc.*,
  258 F.R.D. 310 (N.D. Tex. 2009) ..............................................................................5

*Southern Scrap Material Co. v. Fleming*,
  2003 WL 21474516 (W.D.La. June 18, 2003) .........................................................19

*Stoffels v. SBC Commc'ns, Inc.*,
  263 F.R.D. 406 (W.D. Tex. 2009) ..............................................................................8

*TIGI Linea Corp. v. Professional Products Grp.*,
  LLC, No. 4:20-cv-087, 2020 WL 7773581 (E.D. Tex. Dec. 30, 2020)..............................15, 16

*United States ex rel. Ferguson v. Lockheed Martin Aeronautics Co. and Lockheed
  Martin Corp.*,
  3-16-cv-2995-B (N.D. Tex.) (filed October 26, 2016) .............................................13

*United States ex. rel. Ray v. GSD&M Idea City LLC*,
  No. 3:11-cv-1154-O, 2012 WL 12925016 (N.D. Tex. May 15, 2012)
  (O'Connor, J.) ...........................................................................................................6

*United States v. Chevron Corp.*,
  No. C 94–1885 ........................................................................................................14

*United States v. El Paso Co.*,
  682 F.2d 530 (5th Cir. 1982) ...................................................................................19

*United States v. Pipkins*,
  528 F.2d 559 (5th Cir. 1976) ...................................................................................17

*United States v. Robinson*,
  121 F.3d 971 (5th Cir. 1997)............................................................................5, 17, 18

*Zapmedia Services, Inc. v. Apple Inc.*,
  No. 2:08–CV–104–DF–CE, 2010 WL 5140672 (E.D. Tex. Sept. 24, 2010) .........................21

*Zloop, Inc. v. Phelps Dunbar LLP*,
  No. 6:18-cv-031, 2019 WL 1320542 (W.D. La. Mar. 22, 2019)............................................15

**Statutes**

10 U.S.C. § 2306(a) ......................................................................................................2

31 U.S.C. § 3730(h) ....................................................................................................17

False Claims Act ..................................................................................................1, 6, 17, 22

FCA..................................................................................................................................22, 23

Truthful Cost or Pricing Data Act, 41 U.S.C. § 35 ........................................................2

**Rules**

FED. R. EVID. 502 ...............................................................................................................20

Federal Rule of Evidence 502(a) ..............................................................................19, 20

Rule 26's ............................................................................................................................21

Rule 502(d) .........................................................................................................................5

**Regulations**

48 CFR 15.403–4 ................................................................................................................3

Corporate Policy Statement CPS-718.........................................................................13

FAR Part 15 ....................................................................................................................2, 3

**I. INTRODUCTION**

Over the course of her employment at Defendant Lockheed Martin Corporation ("Lockheed"), Plaintiff/Relator Maria Del Carmen Gamboa Ferguson ("Relator") uncovered a systematic and intentional scheme to defraud the United States Government. That scheme involved Lockheed falsely certifying compliance with federal law and regulations governing a prime contractor's responsibility to obtain and produce accurate, complete, and current cost or pricing data from the subcontractors it proposes using for the contracted project. As she began to uncover that scheme, Relator reported the fraud to various Lockheed employees, managers, and executives, including in-house attorneys. To preserve the evidence of Lockheed's wrongdoing, Relator emailed herself documents and communications that tended to prove Lockheed's fraud. Consistent with her obligations under the Federal Rules of Civil Procedure, Relator last year produced to Lockheed 28,432 documents and communications that she had emailed to herself. Now, Lockheed wrongfully asserts privilege over 65 of those documents.

Lockheed's assertion of privilege over these 65 documents is fundamentally flawed, for multiple reasons. The communications at issue are not privileged because Relator was not seeking legal advice when she, often unsolicited, reported Defendant's fraudulent conduct to in-house lawyers. Many of the subject communications are directed to non-attorneys, or include non-attorneys as copies, and they were not made in confidence or intended to secure legal advice. Lastly, Lockheed waived any claim of privilege when it communicated with Relator after November 1, 2017, even with attorneys present, because by then, Lockheed was fully aware it was communicating with a known litigation adversary. For all these reasons, Lockheed cannot meet its burden to prove that these documents are protected from disclosure by the asserted privilege.

Moreover, Lockheed's assertion of privilege over the communications at issue would undermine the functioning of the False Claims Act. Were government contractors like Lockheed

1

allowed to suppress an employee's communications that include reports of fraudulent conduct made to company attorneys, then instances of fraud would regularly be concealed, and relators who were responsible enough to inform company attorneys of fraud would be deterred from coming forward when the company fails to act, for fear they would be barred from disclosing key evidence of the fraud and the company's knowledge of it. This Court should reject such a backwards proposition.

Relator respectfully requests that the Court (1) order that the 65 documents listed in the privilege log at App. at 004–011 are not privileged; or, in the alternative (2) review *in camera* those 65 documents that Lockheed asserts are privileged, find that the documents are not privileged, and compel disclosure of those documents to Relator.

## II. BACKGROUND

Relator filed her Complaint against Lockheed under the False Claims Act ("FCA") detailing a vast and long-term scheme to defraud the U.S. Department of Defense (the "Government") in connection with numerous contracts to provide complex aircraft, including the F-35 Joint Strike Fighter, the F-22 Raptor, the F-16 Fighting Falcon, and the C-130J Hercules. Dkt. No. 1 ¶¶ 1, 38, 92. Lockheed, which is the "prime contractor" for these programs, relies on numerous subcontractors to help manufacture the parts for the aircraft. Once it receives all the necessary parts from the subcontractors, Lockheed assembles the aircraft and provides them to the Government.

In contracting with and performing this work for the Government, Lockheed must comply with certain federal statutes and regulations, including the Cost and Accounting Standards in Federal Acquisitions Regulation ("FAR") Part 31, the policies and procedures for negotiated acquisitions in FAR Part 15, and the Truth in Negotiations Act ("TINA"), 10 U.S.C. § 2306(a) (now formally titled the Truthful Cost or Pricing Data Act, 41 U.S.C. § 35). These laws require

Lockheed to submit and certify "cost or pricing data," to mitigate the risk that the federal government pays inflated prices for goods and services under such contracts. Dkt. No. 1 ¶¶ 11, 12. The FAR requires Lockheed to evaluate its subcontractors' proposals. *Id.* ¶ 13. If the value of the subcontract exceeds the FAR 15.403-4(a)(1) threshold (which was $750,000 before July 1, 2018), then Lockheed must certify to the Government that all certified cost and pricing data ("CCPD") supplied by its subcontractors—data that feeds directly into the price the Government eventually pays to Lockheed for the assembled aircraft—is accurate, complete, and current. 48 CFR 15.403–4. The Government relies on Lockheed to evaluate whether its subcontractors' cost and pricing data conform with the FAR. Dkt. No. 1 ¶ 13.

Relator is an auditor who worked at Lockheed from 2005 until June 2018. *Id.* ¶ 9. She worked as Director of Internal Audit and Senior Manager for the Subcontract Audit group. *Id.* In this role, Relator audited the subcontractors that supplied parts and labor for the various aircraft that Lockheed was assembling as the Government's prime contractor, to ensure that the subcontractors and Lockheed complied with FAR and TINA. *Id.* During her audits of various subcontractors, Ferguson learned that Lockheed, from at least 2010 to 2018, had violated those laws and regulations and therefore appeared to Relator to be passing on fraudulent charges to the Government. *Id.* ¶¶ 25–28. Specifically, Ferguson discovered that Lockheed was performing inadequate and noncompliant analyses on its subcontractors and, as a result, putting the Government at substantial financial risk of paying improperly (and hugely) inflated prices for the aircraft. *Id.* ¶ 14. Lockheed (1) obtained false CCPD from its subcontractors that was not accurate, complete, or current; (2) failed to perform legitimate arms-length subcontract cost analyses; and (3) failed to require its subcontractors to obtain CCPD from lower-tier suppliers (*i.e.*, "sub-subcontractors"). *Id.* ¶¶ 25–28. Worse still, Lockheed *knew* about these problems—at the very

3

least, thanks to Relator's own efforts and reports to Lockheed. *Id.* ¶¶ 15–25, 31–35.

The Complaint alleges a systemic fraud involving Lockheed and its entire supplier base, which Relator uncovered in her work with numerous specific subcontractors. *Id.* ¶¶ 38, 92. The six subcontractors that Relator identifies in her Complaint are representative examples of Lockheed's fraudulent course of conduct. They include Tata Lockheed Martin Aerostructures Ltd. ("TLMAL"); Esterline-Kirkhill ("Kirkhill") (now Kirkhill-TA Co.); Kongsberg Defense and Aerospace ("KDA"); Korea Aerospace Industries, Ltd. ("KAI"); Collins Elbit Vision Systems, LLC f/k/a Rockwell Collins-ESA-Vision Systems, LLC, Elbit Systems Ltd., and Elbit Systems of America, L.L.C. (collectively, "Elbit"); and Aerospace Industrial Development Corp. ("AIDC").

Ferguson repeatedly complained to Lockheed after her audits revealed this course of misconduct, but Lockheed failed to fix the problem. *Id.* ⁋ 23.  Instead, Lockheed chastised and demoted her, and eventually fired her. *Id.* ¶¶ 18–19, 23. One of her superiors accused her of "costing [Lockheed] money" by performing audits that, if acted upon, would result in lower subcontract costs. *Id.* ¶ 18

Over the course of her time at Lockheed, Relator emailed herself documents from her Lockheed company email address to her personal email address to preserve evidence of the fraud that Lockheed was committing, its pervasive cover up, and its refusal to right the ship. *See* App. at 013 ¶ 5. Several of these documents included communications with attorneys, in part because, until 2016, Relator's audit group was assigned to report directly to Lockheed's Legal Department. *Id.* ¶ 7. Relator produced her documents to Lockheed initially on March 30, 2023, and then again

4

on November 17, 2023. Lockheed now claims a very small subset of these documents contain communications subject to the attorney-client privilege.[1]

Lockheed first raised this claim of privilege on April 12, 2024, and provided a privilege log identifying a total of 126 documents that it claimed were privileged. App. at 004–011. Forty-nine of the documents Lockheed identified in that log were not relevant to this litigation, so Relator agreed to remove those documents from its litigation database. The parties met and conferred on May 7, 2024, to discuss the documents relevant to this litigation that Lockheed alleges are privileged, but were unable to reach agreement. Relator has limited the number of documents for which she is challenging Lockheed's assertion of privilege, choosing not to challenge the privilege assertion for the remaining documents (and thus agreeing to destroy any copies of those documents in her or her counsel's possession). Relator now moves to compel production of 65 documents identified in Lockheed's privilege log (out of the original 126).[2] App. at 004– 011.

### III. LEGAL STANDARD

"There is no presumption that a company's communications with counsel are privileged." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017).*Id.* at 696. "For a communication to be protected under the [attorney-client] privilege, the proponent 'must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of

---

[1] When first contacted by Lockheed on this issue, Relator agreed to follow the procedures in the parties' Order Pursuant to Federal Rule of Evidence 502(d), Dkt. No. 66, even though it was unclear that Order applied, given these documents had been produced by Relator, not by Lockheed. Relator sequestered the documents and ceased any reliance on these documents for any purpose other than for filing this motion. *See* Dkt. No. 66, ¶ 9.

[2] Technically, Relator does not need Lockheed to produce these documents, given that she already has them in her possession (and has kept these 65 documents in her possession pursuant to paragraph 9 of the parties' Rule 502(d) order, albeit without making any further use of them outside of this motion). But the most straightforward way to put this dispute before the Court is to style it as a motion to compel, since Lockheed would be obligated to produce these documents out of its own files if the Court finds (as Relator urges) that they are not privileged.

securing either a legal opinion or legal services, or assistance in some legal proceeding.'" *Id.* at 695  (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997). The party asserting the privilege bears the burden to demonstrate that privilege applies. *Id.* The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists. *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 315 (N.D. Tex. 2009). Claims brought under federal law are governed by the federal common law of attorney-client privilege. *In re E.E.O.C.*, 207 F. App'x 426, 431 (5th Cir. 2006). The attorney-client privilege should be "strictly confined within the narrowest possible limits" given that it "impedes the full and free discovery of truth." *United States ex. rel. Ray v. GSD&M Idea City LLC*, No. 3:11-cv-1154-O, 2012 WL 12925016, at *3 (N.D. Tex. May 15, 2012) (O'Connor, J.) (citing *In re Grand Jury Proceedings in re Fine*, 641 F.2d 199, 204 n.5 (5th Cir. 1981)).

## IV. ARGUMENT

The attorney-client privilege does not apply to the documents at issue because the communications were not made to secure a legal opinion, legal services, or assistance in some legal proceeding. Rather, the primary purpose of Relator's communications was to report the systemic fraud she uncovered when auditing Lockheed's subcontractors. Moreover, many of these communications between Lockheed and Relator occurred after Lockheed knew Relator had filed lawsuits against it, and thus was a known adversary to Lockheed (with her own legal counsel) in litigation addressing the very topics of those communications. For that additional reason, any such communications with Relator could not have been protected by the privilege. Lockheed cannot meet its burden to prove that these communications are privileged. Finally, Lockheed's assertion of privilege over these documents would effectively gut the *qui tam* provision of the False Claims act in cases where a relator reported wrongdoing to company counsel.

6

If the Court has any doubt about whether these documents are properly subject to a claim of attorney-client privilege, Relator respectfully requests an *in camera* review of these documents, which will show that attorney-client privilege does not apply.

**A.    Relator was not seeking legal advice.**

Attorney-client privilege applies to communications only if they were made "for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding," *EEOC*, 876 F.3d at 695, and only to " those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The communications identified in Lockheed's privilege log do not seek a legal opinion or legal services. Not only does Relator swear that her emails were not intended to seek legal advice (App. at 013–014 ¶¶ 7–8), but the substance of the documents themselves reveal that Relator intended only to report the fraudulent conduct she witnessed in an effort to reform the improper practices of Lockheed's PCA group.

**1.    <u>Relator reported the fraud in an attempt to reform Lockheed's practices, not to seek legal advice.</u>**

Relator's primary purpose in communicating with Lockheed attorneys was to report the fraud that she witnessed when she audited Lockheed's subcontractors, in order to spur reform of Lockheed's internal practices. When she audited the subcontractors' proposals, Relator discovered that Lockheed's evaluation of its subcontractors' cost or pricing data and practices was massively inadequate. The Lockheed employees tasked with evaluating the subcontractors' direct costs are in the Price/Cost Analysis ("PCA") group. Lockheed's internal auditors, which included Relator, are responsible for analyzing subcontractors' indirect costs. Because Relator observed Lockheed's PCA group violating federal law when it analyzed subcontractor proposals, she reported what she witnessed to both her supervisors and the PCA group supervisors, including Kay Cosper (Director

of Internal Audit), various members of the Legal Department,[3] Mark Byars (Senior Manager in the PCA group), Bob Mack (Director of the PCA group), Amy Gowder (Vice President of Procurement), Darren Hill (Director of Ethics), Tom Simmons (Operations), and Orlando Carvalho (Vice President of Aeronautics). In her communications with each of these Lockheed employees and executives, Relator voiced her concerns that Lockheed's PCA analysts were not complying with FAR and TINA and not performing adequate cost analyses. The communications that Lockheed asserts are privileged evidence Relator's real-time reporting of the PCA group's fraudulent course of conduct.

Part of the reason that Relator contacted Lockheed attorneys was to garner support from multiple departments in her campaign to reform Lockheed's conduct. *See* App. at 013–14 ¶¶ 6–7. She both flagged her concerns with the PCA group's deficiencies and also offered practical, business-oriented solutions to improve the PCA group operations, such as increased staffing so that Lockheed had enough people to evaluate the many proposals it receives on each prime contract. App. at 019–020. Relator also identified ways in which the PCA group's training materials could be improved to ensure proper evaluation of supplier costs. *Id.* Relator's communications documenting PCA group problems and suggesting practical solutions were not seeking legal advice and therefore were not privileged. *See Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009); *see also Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 474–75 (N.D. Tex. Mar. 29, 2004) ("Where an attorney is functioning in some other capacity—such as an accountant, investigator, or business advisor—there is no privilege.").

---

[3] From 2008 until 2016, Relator reported to the Legal Department. In 2016, Lockheed reorganized her group under the supervision of Supply Chain Management.

App. at 019–020, republished below, is emblematic of the type of email that Lockheed

wrongfully claims is privileged. It is directed primarily to Mark Byars, the Senior Manager of the

PCA group, who is not a lawyer, and it reads as follows:

| | |
|---|---|
| **From:** | Ferguson, Maria C [maria.c.ferguson@lmco.com] |
| **Sent:** | 2/16/2017 3:07:29 AM |
| **To:** | Hill, Darren J [darren.j.hill@lmco.com]; Byars, Mark H [mark.h.byars@lmco.com]; Spencer, Rob [rob.spencer@lmco.com] |
| **CC:** | Maria Ferguson [mariaferguson235@yahoo.com] |
| **Subject:** | Intentional Inadequate Cost Analysis |





This email (1) reports the fraudulent course of conduct (" ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ "); (2) asks for more staffing and training ("█████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

10

██████████████████████████████████████████████████

██████████████ "); (3) is directed to the Senior Manager of the PCA group (Mark), a non-lawyer; and (4) copied another non-lawyer on the email (Hill). Nowhere does Relator ask for legal assistance.

Other emails that Lockheed asserts are privileged echo this approach in simply describing the facts and reporting fraud as to certain subcontractors specifically:

**From:** Ferguson, Maria C (US)
**Sent:** Tuesday, June 13, 2017 4:21 PM
**To:** Hill, Darren J (US) <darren.j.hill@lmco.com>
**Cc:** Spencer, Rob (US) <rob.spencer@lmco.com>
**Subject:** 2 of 2



App. at 021–023. The email goes on to detail many underlying facts relating to Lockheed's subcontract with TLMAL. *Id.* It is directed to a non-attorney and never seeks legal assistance.

Even the emails directed to attorneys mimic this approach, reporting facts and not seeking legal advice:

| From: | Ferguson, Maria C [maria.c.ferguson@lmco.com] |
|---|---|
| Sent: | 7/21/2017 3:55:33 PM |
| To: | Kramer, Beth M [beth.m.kramer@lmco.com] |
| CC: | Macgillivray, Roxane [roxane.macgillivray@lmco.com]; Maria Ferguson [mariaferguson235@yahoo.com] |
| Subject: | Closing Meeting |



Carmen Ferguson
Audit Manager - Subcontract Audit
Supply Chain Management
Lockheed Martin Aeronautics
Fort Worth Office:  817-935-5957
Cell:  817-734-5627
Efax:  817-762-5937
email:  maria.c.ferguson@lmco.com

App. at 024. Here, Relator details Lockheed's attempt to violate federal regulations that require a cost analysis, along with Lockheed's attempt to exclude her from the audits. And yet again, she does not ask for any legal advice.

These example communications from Lockheed's privilege log reveal a pattern of Relator reporting facts about legal violations. Nowhere in these communications is she seeking legal advice or opinions. These documents are not privileged.

12

Additionally, Relator's numerous lawsuits against Lockheed shed further light on her state of mind when sending these emails that Lockheed now claims are privileged. Relator filed the first of her *qui tam* complaints in October 2016. *See United States ex rel. Ferguson v. Lockheed Martin Aeronautics Co. and Lockheed Martin Corp.*, 3-16-cv-2995-B (N.D. Tex.) (filed October 26, 2016). Relator would not have been seeking legal services from a company she is suing when those services involve the very allegations in her complaint.

Lastly, Lockheed's corporate policy on reporting violations or defective pricing contemplates non-privileged communications. Corporate Policy Statement CPS-718 states that "Employees must immediately report information relating to potentially Reportable Violations, or other violations of law or instances of significant employee misconduct, ***to their management, Human Resources, Ethics Office, or*** Legal Counsel." App. at 028 (emphasis added). The fact that non-attorneys are identified as intended recipients of these reports proves that even Lockheed's own policies don't consider Relator's emails, which report fraud, to be privileged. Even if the violations are later investigated by attorneys, the reporting of violations themselves are not privileged communications. Relator followed this policy to the tee—she emailed management, ethics, and legal counsel. In fact, she even emailed herself the policy and stated she would abide by it. App. at 031–032.

Even if, theoretically, some parts of some of these documents included legal advice provided by a Lockheed attorney (they do not), that would not render the documents privileged in their entirety. Lockheed is permitted to claim privilege over actual legal advice its attorneys provide (unless Lockheed waives the privilege), but Lockheed is not permitted to claim privilege over facts—including the fact that fraud has been committed, and the fact that Relator reported the fraud to Lockheed on a particular date. Lockheed is likewise not permitted to claim privilege over

emails in which Relator reports facts to Lockheed personnel for a purpose other than obtaining legal advice. If any portion of the documents at issue actually contains legal advice being communicated by Lockheed attorneys—and if the privilege has not been waived by Lockheed, *but see infra*, pp. 18–22—then Lockheed should be ordered to redact only those parts of the documents at issue, rather than improperly withhold entire documents.[4]

### 2.    Relator addressed many of the communications to non-lawyers.

Directing many of these communications to a non-lawyer further demonstrates Relator's lack of intent to seek legal advice. *See In re Vioxx Products Liability Litigation*, 501 F.Supp.2d 789 (E.D. La. Aug. 14, 2007) ("When, for example, Merck simultaneously sends communications to both lawyers and non-lawyers, it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes."); *see also Medina v. Buther*, No. 15-CV-1955, 2018 WL 4383098, at *3 (S.D.N.Y. Aug. 22, 2018) ("Where, as here, 'non-legal personnel are asked to provide a response to a matter raised in a document, it cannot be said that the "primary" purpose of the document is to seek legal advice.'"); *United States v. Chevron Corp.*, No. C 94–1885 SBA, 1996 WL 444597, at *6 (N.D.Cal.1996) ("The attorney-client privilege does not attach, however, to documents which were prepared for simultaneous review by both legal and nonlegal personnel within the corporation").

Even where Relator copied Lockheed in-house counsel on these types of communications, that does not help Lockheed's argument, as it is black-letter law that cc'ing lawyers does not confer

---

[4] Lockheed also claims attorney-client over several documents that are not communications at all. For example, FERGUSON_000026545 is a PowerPoint on the costs underlying TLMAL's proposal. The file author (dmishra@tataadvancedsystems.com) is not even a Lockheed email address. Another example is FERGUSON_000026625, a draft audit memo that is directed to the VP of Finance. Relator emailed these underlying documents to a Lockheed attorney, but that does not make the underlying documents themselves privileged.

attorney-client privilege protections on a communication. Courts routinely find that merely copying attorneys on emails is insufficient to establish privilege. *See Zloop, Inc. v. Phelps Dunbar LLP*, No. 6:18-cv-031, 2019 WL 1320542, at *3 (W.D. La. Mar. 22, 2019) ("Documents that [are] 'carbon copied' to counsel for informational purposes rather than for legal advice are not privileged.") (collecting cases); *TIGI Linea Corp. v. Professional Products Grp.*, LLC, No. 4:20-cv-087, 2020 WL 7773581, at *6 (E.D. Tex. Dec. 30, 2020) ("Merely cc'ing an attorney is 'clearly insufficient to establish the [attorney-client] privilege.'") (citing *In re Avantel, S.A.*, 343 F.3d 311, 321 (5th Cir. 2003)). Lockheed's privilege log contains many entries reflecting communications with non-lawyers where lawyers are copied. *See* App. 004–011. Other recipients of Relator's emails include members of the PCA group (Byars), the ethics department (Hill), the audit group (Kay Cosper, Lynn Tennison), and other individuals who are not identified as attorneys (Gildewell, Woodward). The fact that Relator sometimes copied lawyers on these communications does not make them privileged.[5]

One example of such circumstances is App. at 033–037, excerpted below. This email is directed to a non-lawyer (Hill) and details significant problems with Lockheed's verification of direct labor and direct material costs. *Id.*

---

[5] Each of the following documents identified in Lockheed's privilege log are addressed to non-attorneys and only copy attorneys: FERGUSON_000022383; FERGUSON_000022387; FERGUSON_000022323; FERGUSON_000022303; FERGUSON_000022299; FERGUSON_000022291; FERGUSON_000022288; FERGUSON_000022284; FERGUSON_000022294; and FERGUSON_000026352.

**From:** Ferguson, Maria C (US)
**Sent:** Tuesday, June 13, 2017 3:14 PM
**To:** Hill, Darren J (US) <darren.j.hill@lmco.com>
**Cc:** Spencer, Rob (US) <rob.spencer@lmco.com>
**Subject:** Direct Labor and Direct Material Verification Inadequacies. 1 of 2



*Id.* The email goes on to explain the problems with Lockheed's approach to verifying subcontractor costs. Lockheed claims this is privileged merely because a lawyer is copied, but that is insufficient to establish privilege. *TIGI Linea*, 2020 WL 7773581, at *6.

The other documents identified in Lockheed's privilege log suffer from these exact same deficiencies. An *in camera* review of each of those documents will reveal that Relator was not seeking legal services or opinion, but rather notifying her supervisors of serious problems within Lockheed's PCA group.

**B.    The post-November 2017 emails identified by Lockheed were not confidential because Relator was a known litigation adversary.**

Lockheed cannot claim privilege over communications involving Relator after November 1, 2017, because by then, it knew that Relator was a litigation adversary. In 2016, Ferguson originally filed three *qui tam* complaints against Lockheed in the Northern District of Texas, Dallas

16

Division, alleging that Lockheed performed inadequate cost analysis on its subcontractors. Those cases were eventually consolidated and later unsealed in 2019.[6] During the investigative phase of those complaints, the Department of Justice served Lockheed with redacted copies of Relator's three *qui tam* complaints on November 1, 2017. App. at 014.[7] From that point on, Lockheed was aware that Relator was an adversary in litigation concerning the conduct that she had been flagging for years in her emails to her supervisors, ethics, Supply Chain, and in-house counsel.

These post-November 1, 2017, communications are not privileged because Lockheed could not expect that its communications with a known adversary in litigation were confidential, as that term is used in the context of attorney-client privilege doctrine. It is "vital to a claim of privilege that the communication have been made and maintained in confidence." *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976). "The assertor of the privilege must have a reasonable expectation of confidentiality, either that the information disclosed is intrinsically confidential, or by showing that he had a subjective intent of confidentiality." *Robinson*, 121 F.3d at 976. But Lockheed had no reasonable expectation of confidentiality on communications it engaged in on these issues with a litigation adversary. Moreover, Lockheed was aware that Relator was represented by counsel on these particular issues; it cannot claim confidentiality or attorney-client privilege over communications with an employee that is a litigation adversary represented by an attorney on the very issues they were communicating about.

---

[6] Ferguson and a former co-worker also filed a complaint against Lockheed alleging violations of the FCA's anti-retaliation provision pursuant to 31 U.S.C. § 3730(h).

[7] The complaints allege that Lockheed violated the False Claims Act when it performed inadequate cost analysis or failed to obtain certified cost or pricing data from subcontractors TLMAL, Elbit, KAI, KDA, and Kirkhill. As the documents in the privilege log show, these are the subcontractors that Relator had been flagging for years. The complaints contain detailed discussions of audits of those subcontractors, and Relator was the one who personally audited all of them. Although the redacted copies of the complaints redacted Relator's name, Lockheed cannot possibly claim it was unaware that Ms. Ferguson was the Relator.

17

In fact, Lockheed entered into an agreement with Relator's attorney in February 2018 to memorialize the parties' conversation about "recent and ongoing communications between Lockheed Martin in-house attorneys and your client." App. 038–040. In that agreement, the parties agreed that Lockheed "may continue to communicate with and respond to Ms. Ferguson via email, telephone, and in-person meetings regarding ongoing Lockheed Martin business, as well as issues or concerns Ms. Ferguson raises about alleged non-compliances or misconduct." *Id.* Lockheed contemplated how to ensure its communications with Relator complied with legal and ethical rules governing communications with represented parties. Yet nowhere in this agreement does Lockheed state any expectation that its communications with Relator would be privileged (nor could Lockheed have reasonably expected any such thing under the circumstances). This agreement is only further proof that Lockheed did not intend (and could not reasonably have intended) for its communications with Relator during this time period to be confidential, privileged communications.

The Court can dispel with Lockheed's privilege arguments on all documents that post-date November 1, 2017, because those documents were communications with a known litigation adversary, and thus Lockheed had no reasonable expectation that communications with Relator would be confidential for purposes of the attorney-client privilege.

## C.    Lockheed waived its privilege.

Even if Lockheed at the time had any expectation of privilege in the subject emails—and Lockheed did not, for the reasons explained above—Lockheed plainly waived any such privilege by disclosure and delay. A party waives attorney-client privilege "when it voluntarily discloses privileged communications to a third party, including an adversary in litigation." *AHF Community Development, LLC. V. City of Dallas*, 258 F.R.D. 143, 148 (N.D. Tex. Feb. 12, 2009); *see also Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir.1993) ("Patently, a voluntary disclosure

18

of information which is inconsistent with the confidential nature of the attorney client relationship waives the privilege."); *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("[A] breach of confidentiality forfeits the client's right to claim the privilege.").

## 1. **Lockheed's voluntary disclosure to Relator means it waived its privilege.**

Every communication that Lockheed made to Relator after it was served with the redacted complaints were disclosed to an adversary in litigation. Lockheed had no reasonable expectation of confidentiality over its communications with Relator because it knew it was being sued over the same fraudulent course of conduct that Relator had been flagging for years. Even a cursory review of the subject lines in the privilege log reflects the substance of those communications concerned the exact same allegations Relator detailed in her complaint—inadequate cost analysis on Lockheed's subcontractors. *See* App. at 004–011 ("Re False Statements and Inadequate Verification" and "Re: HAI and Kirkhill and TLMAL" and "AIDC EX 4"). This disclosure was not inadvertent, and Lockheed's attorneys voluntarily engaged in these communications. Lockheed was fully aware it was communicating with an adversary.

Because Lockheed waived the privilege by communicating with Relator regarding her allegations when it knew she was a litigation adversary, all communications with Relator about her allegations are waived. The "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir.1999). "Moreover, waiver of an attorney-client communication waives the privilege as to all other communications relating to the same subject matter." *S.E.C. v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. Oct. 16, 2006) (*citing Southern Scrap Material Co. v. Fleming*, 2003 WL 21474516, *7 (W.D.La. June 18, 2003)). Federal Rule of Evidence 502(a) applies to intentional disclosure of information that is otherwise covered by privilege. FED. R. EVID. 502(a). The rule provides that disclosure waives the privilege if "(1) the waiver is intentional; (2) the disclosed and

19

undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." *Id.*

Lockheed's waiver as to information disclosed to Relator after November 1, 2017 extends to the entire subject matter related to those disclosures. The subject matter of the 28 documents in Lockheed's privilege log after November 1, 2017 relates to Lockheed's inadequate verification of subcontractor costs, failure to properly obtain certified cost or pricing data, failure to staff and train the PCA group, audits of the subcontractors, problems in subcontracts' costs (including at least TLMAL and AIDC), and defective pricing. The topics in those disclosures relate to the exact same subject matter identified in all the pre-November 2017 documents. Lockheed's correspondence with a litigation adversary is one of the "unusual situations" contemplated by Rule 502(a) "in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." FED. R. EVID. 502 advisory committee's explanatory note (revised Nov. 28, 2007). Applying the waiver to all communications at issue prevents Lockheed from having the unfair advantage of shielding Relator's pre-suit reporting of fraud. Those documents are mentioned above, and an *in camera* review will show that the subject matter is identical. The Court should therefore find waiver as to all 65 documents identified in Lockheed's privilege log and raised in this motion.

### 2.    **Lockheed's delay in asserting privilege constitutes waiver.**

Lockheed's significant delay in claiming privilege over these documents also effects a waiver. Lockheed was aware that Relator was sending herself emails to document the fraud she uncovered. She told them so. App. at 041–042 ("When I find the same types of things that I have brought up before though, I just chalk it up to the broken system, send myself an email and move on."). Lockheed terminated Ferguson in June 2018 purportedly for "misconduct related to sensitive protected data/information in violation of company policies and express instructions." App. at 043.

Yet Lockheed waited nearly six (6) years to claim any privilege over these emails that she had sent to her personal email account. Such a substantial delay constitutes waiver.

Lockheed has also delayed asserting privilege in this case. "Because Rule 26's requirement of describing the nature of documents withheld may be 'frustrated by undue delay in making the specific claim [of privilege],' courts may find such delay to be a waiver of the privilege." *Connor v. Deckinga*, No. 4:10-CV-00855-Y, 2012 WL 13020346, at \*3 (N.D. Tex. Sept. 28, 2012). First, Lockheed's privilege log cites one email that was excerpted *in the Complaint*. ECF No. 1 at 28. The Complaint was unsealed and served on Lockheed on November 7, 2022. By then, Lockheed was on notice that Relator retained documents from her time at Lockheed. Lockheed waived privilege over this document by waiting over one and a half years to assert it was privileged. Second, several documents—FERGUSON_000003224, FERGUSON_000003221, and FERGUSON_000003222—that Lockheed identifies were served on March 30, 2023, over one year ago. The Court should find that Lockheed's undue delay to be a waiver of privilege. *Zapmedia Services, Inc. v. Apple Inc.*, No. 2:08–CV–104–DF–CE, 2010 WL 5140672, at \*2 (E.D. Tex. Sept. 24, 2010) (finding over eight-month delay in attempting clawback after learning of disclosure waived privilege.); *Apex Mun. Fund v. N-Group Securities*, 841 F.Supp. 1423, 1433 (S.D. Tex. Oct. 28, 1993) ("Simply put, a one-year delay in taking any action to attempt to preserve the privilege exemplifies carelessness. . . . The court finds that DBL waived the attorney-client privilege with respect to all privileged documents disclosed by Bentsen.").

**D.      A finding that these documents are privileged would effectively gut the *qui tam* provision of the False Claims Act.**

Lockheed's position on privilege, if accepted, would substantially undermine the policies underlying the False Claims Act. "The purpose of the False Claims Act, of course, is to discourage fraud against the government, and the whistleblower provision is intended to encourage those with

21

knowledge of fraud to come forward." *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir.1994). And that is exactly what Relator did. From 2010 to 2018, Relator was trying to "come forward" to protect the Government from pervasive fraud by reporting her knowledge of the FAR and TINA violations to decision-makers, including her superiors, within Lockheed. Lockheed is trying to suppress the substance of those reports and communications from Relator by claiming attorney-client privilege. But Relator was not seeking legal advice; instead, she was informing her supervisors, which at times included in-house counsel, of the FAR violations and fraudulent conduct she was witnessing.

A whistleblower's communications to company attorneys and other supervisors documenting internal fraud—and documenting the company's knowledge of that fraud—should not be cloaked in privilege and excluded from discovery, because to do so would thwart fundamental policies underlying the qui tam provisions of the FCA. First, relators would be deterred from "coming forward" and reporting the fraud in the first place were the company able to shield the substance of their whistleblowing from disclosure in a later *qui tam* lawsuit. Second, whistleblowers who nevertheless chose to come forward would be motivated to avoid disclosing the fraud to in-house counsel, for fear that would give the company the opportunity to "bury the fraud" by using its legal department, even when "coming forward" to in-house counsel would otherwise make the most sense. Either scenario would undermine the efficacy of the FCA.

Nor is the rule Lockheed now advocates necessary to protect proper invocation of the privilege. Companies wishing to preserve properly privileged communications while also preserving the ability of employees to engage in protected internal reporting can set up separate channels for reporting potentially problematic conduct to company attorneys, versus seeking legal advice. Setting up separate, well-defined channels in that way would easily protect both sets of

22

interests (*i.e.*, the interest in encouraging transparent internal whistleblowing, and the interest in protecting truly privileged communications seeking legal advice). Here, though, Lockheed made no effort to channel whistleblower communications in such a way. Instead, Lockheed waited six years after Relator was terminated and had filed suit to identify her internal whistleblowing reports and evidence of systemic fraud as "privileged" communications.

Courts construe attorney-client privilege narrowly because the "assertion of privileges inhibits the search for truth." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. Mar. 29, 2004) (quoting *Perkins v. Gregg County*, 891 F.Supp. 361, 362 (E.D. Tex. 1995)). Lockheed's position would severely inhibit the search for truth, particularly in the context of *qui tam* actions under the FCA. This Court should reject that proposition.

In fact, Relator herself was concerned that Lockheed would improperly claim privilege over her reporting of violations. In an email to herself on August 25, 2017, which is around the same time Lockheed claims Relator sent privileged communications, Relator detailed the issues she witnessed in TLMAL's timekeeping system. App. at 016–018. In the first line of the email she says, "I am sending this to myself so that I have a record of what was found before Aero Legal finds out and has all data declared Attorney Client Privilege and begins to clean up after TLMAL." *Id.* Seven years ago, Relator expressed her concern that Lockheed would do exactly what it has now done: attempt to suppress the internal paper trail she sought to create that documented Lockheed's wrongdoing—and Lockheed's *knowledge* of that wrongdoing.

## V. CONCLUSION

Relator respectfully requests that the Court (1) order that the 65 documents listed in the privilege log at App. at 004–011 are not privileged; or, in the alternative (2) review *in camera* those 65 documents that Lockheed asserts are privileged, find that the documents are not privileged, and compel disclosure of those documents to Relator.

23

.

Respectfully submitted,

/s/ __Stephen Shackelford_____
Stephen Shackelford, Jr.
Texas State Bar No. 24062998
Steven M. Shepard, *pro hac vice*
W. Jeffrey Melsheimer, *pro hac vice*
Texas State Bar No. 24126417
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Fl.
New York, NY 10001
Telephone:  (212) 729-2012
Fax:  (212) 336-8340
sshackelford@susmangodfrey.com
sshepard@susmangodfrey.com
jmelsheimer@susmangodfrey.com

Floyd G. Short, *pro hac vice*
401 Union Street, Suite 3000
Seattle, WA 98101
fshort@susmangodfrey.com
Telephone: (206) 516-3880
Fax: (206) 516-3883

Scarlett Collings
**SUSMAN GODFREY L.L.P.**
Texas State Bar No. 24001906
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 904-8812
Fax: (713) 654-6666
scollings@susmangodfrey.com

Samuel L. Boyd
Texas Bar No. 027777500
Catherine C. Jobe
Texas Bar No. 10668280
**Boyd & Associates, PC**
6440 North Central Expressway
Suite 600
Dallas, Texas 75206
Phone: 214-696-2300
Fax: 214-363-6856
sboyd@boydfirm.com

24

cjobe@boydfirm.com

Jeff Kearney
Texas State Bar No. 11139500
**Kearney Law Firm**
One Museum Place
3100 West 7th Street, Suite 420
Fort Worth, Texas 76107
Phone: 8l7-336-5600
Fax: 817-336-5610
jkearney@kearneylawfirm.com

*Counsel for Qui Tam Plaintiff/Relator*

## CERTIFICATE OF COMPLIANCE

This is to certify that the movant has complied with Northern District of Texas Local Civil Rule 7.1. This motion is opposed. The parties, including Lockheed's counsel Pat Hagan and Relator's counsel Jeff Melsheimer met and conferred on May 7, 2024 in a good faith effort to resolve this dispute without Court intervention. Agreement could not be reached because Lockheed could not provide a date certain of when custodial documents would be produced.

*/s/ Stephen Shackelford*
Stephen Shackelford

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served on counsel of record on May 17, 2024.

*/s/ Stephen Shackelford*
Stephen Shackelford

25