**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel*. MARIA DEL CARMEN GAMBOA FERGUSON, *ET AL*. | : : : : : : | Civil Action No.: 4:24-cv-00025-O |
| Plaintiff, | : | |
| v. | : : | |
| LOCKHEED MARTIN CORPORATION, Defendant. | : : : : | |

**DEFENDANT LOCKHEED MARTIN CORPORATION'S SUR-SUR-REPLY IN
SUPPORT OF ITS RENEWED MOTION TO DISMISS[1]**

**I.       INTRODUCTION**

Relator's Sur-Reply highlights her defective pleading and confirms that her Complaint

should be dismissed under both the False Claims Act's ("FCA") first-to-file rule and Rule 12(b)(6).

The Sur-Reply attempts to identify a new legal theory not alleged in the Complaint, unsupported

by facts, and insufficient to support FCA liability. After filing serial complaints for the last eight

years, Relator now claims that she meant to allege that Lockheed Martin violated FAR 15.406-3—

a provision requiring the government's contracting officer ("CO") to document negotiations with

a prime contractor—because it is incorporated by reference in DFARS § 252.244-7001, a provision

that requires prime contractors to have an acceptable purchasing system. But Relator did not plead

this theory in her Complaint (or any prior complaints) or include any factual allegations supporting

---

[1] Lockheed Martin submits this brief in accordance with the Court's May 31, 2024 Order (ECF No. 138) permitting Lockheed Martin to submit a sur-sur-reply in support of its Renewed Motion to Dismiss (ECF No. 101).

it. Moreover, the theory is legally invalid because the Fifth Circuit has recognized that merely identifying a regulatory regime permitting and encouraging corrective action is insufficient to support an FCA claim.

That the parties have reached this point—arguing about a theory of liability that is unpled, factually unsupported, and legally nonviable—demonstrates the fundamental pleading defects necessitating dismissal. Relator's efforts to introduce and highlight various FAR provisions to distinguish her Complaint from an earlier-filed FCA lawsuit fail because her allegations lack plausibility and particularity. Relator is left with an FCA case premised on alleged violations of the Truth In Negotiations Act ("TINA") that is materially and essentially the same as the first-filed case. And, her theory that Lockheed Martin fraudulently induced the government to contract based on deficiencies in its prime contract proposals fails because, as demonstrated by her allegations relevant to the Sur-Reply, she lacks any knowledge or factual allegations about what information the government relied on when negotiating those contracts.

II.     **ARGUMENT**

A.     **The Complaint Does Not Connect FAR And DFARS Provisions To A Contract.**

Relator's shifting theory regarding FAR 15.406-3 and DFARS § 252.244-7001 is emblematic of two fundamental problems with her Complaint: she wrongly assumes that all Federal Acquisition Regulation ("FAR") and Defense Federal Acquisition Regulation Supplement ("DFARS") provisions apply in all circumstances, and she lacks any knowledge about what the prime contracts at issue require. First, Relator's Sur-Reply ignores controlling authority. Her opening premise that "[a]ll government contracts are subject to FAR," ECF No. 142 at 2, is contradicted by the Fifth Circuit's repeated explanations that not all FAR and DFARS provisions are included in every government contract. *See United States ex rel. Gage v. Davis S.R. Aviation,*

*L.L.C.*, 623 F. App'x 622, 625-26 (5th Cir. 2015) (affirming dismissal of complaint containing conclusory allegations that the defendants violated certain FAR provisions because not all provisions are required in all contracts); *United States v. Grigsby*, 86 F.4th 602, 610 (5th Cir. 2023) (explaining that the government contract at issue "incorporates various provisions of the [FAR], either 'by reference' or by 'full text.'"). The FAR provides specific instructions to COs specifying how to inform contractors that particular provisions apply. It requires that any *applicable* FAR provision, whether incorporated by reference or through inclusion of the full text of the clause, "shall be identified by number, title, and date" in the contract or solicitation. FAR 52.103(a). Authorized deviations and supplemental provisions, like the DFARS, "shall" be identified in the same manner. FAR 52.103(a) and (b). In other words, FAR and DFARS provisions apply when the contract or solicitation says they apply. *See id.*; *see also Dingle v. Halliburton Co.*, No. H-05-3719, 2006 U.S. Dist. LEXIS 68616, at *7-8 (S.D. Tex. Sep. 25, 2006) (explaining that the FAR "consists of 52 parts. Part 52 contains the actual text of standardized contract clauses incorporated into final contracts with executive agencies. Parts 1 through 51 contain instructions dictating which clauses from Part 52 any particular contract must or must not contain.").[2] Accordingly, Relator's bare assertion that conduct allegedly violates various FAR or DFARS provisions is insufficient as

---

[2] Leading commentators have noted that many government personnel and experienced contractor employees believe that FAR provisions are generally applicable, but "[t]hose beliefs are false." App. at 005. The article analyzes a case in which the government made a similar argument as Relator—that prime contractors have general obligations to manage subcontractors arising out the FAR—and the Armed Services Board of Contract Appeals rejected it as "a plainly invalid legal theory." *Id.* (quoting *Lockheed Martin Integrated Systems, Inc.*, ASBCA 59508, 2016 WL 7655944 (Dec. 16, 2016)). The article concludes that the "rule is simple: In order for a contractor to be obligated to act or refrain from acting in a specified way pursuant to FAR, the contract must plainly say so. It must include a term to that effect, such as a specification or a contract clause." *Id.* at 006; *see also Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1232 (10th Cir. 1999) (characterizing Nash & Cibinic as the "leading treatise" on government contracts law).

a matter of law because there are no facts supporting the legal conclusion that Lockheed Martin was bound by those provisions. *See Gage*, 623 F. App'x at 625-26; *see also Benfield v. Magee*, 945 F.3d 333, 336-37 (5th Cir. 2019) ("We do not, however, accept as true legal conclusions, conclusory statements, or 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

Second, the Sur-Reply highlights the absence of allegations tying the identified FAR and DFARS provisions to actual contracts or solicitations. Previously, Relator argued repeatedly that Lockheed Martin violated FAR 15.406-3 without tying that provision to any applicable contract. *See* ECF No. 120 at 6, 15-17. Now apparently conceding that FAR 15.406-3 applies only to the government,[3] Relator's Sur-Reply explains that she meant to allege that Lockheed Martin "is required to comply with 15.406-3 pursuant to DFARS § 252.244-7001." ECF No. 142 at 2. But the Complaint references DFARS § 252.244-7001 only twice, and each reference occurs in a string citation of provisions unconnected to any specific contract, demonstrating that all Relator actually alleged, contrary to Fifth Circuit authority, is the general applicability of unconnected FAR and DFARS provisions. *See* Complaint, ECF No. 1 at ¶ 37 (asserting "[v]iolation of prime contract clauses . . . directly *and via violations of FARs*, including, but not limited to, . . . 15.406-3, . . . [DFARS] § 252.244-7001") (emphasis added); ¶ 93 (substantially the same). Similarly, while Relator now contends that she meant to allege that "DFARS § 252.244-7001 is expressly incorporated into Lockheed's prime contracts," she does not cite her Complaint because the Complaint includes ***no*** such allegation. *See* ECF No. 142 at 3; ECF No. 1 at ¶¶ 37, 93.

---

[3] *Compare* Lockheed Martin's Reply, ECF No. 122 at 7 ("FAR 15.406-3 says *nothing* about a prime contractor's obligations—it is directed to the *government* contracting officer.") *with* Relator's Sur-Reply, ECF No. 142 at 2 ("Though the provision expressly references the government contracting officer . . .").

The absence of allegations tying FAR and DFARS provisions to governing contracts is another flaw under controlling Fifth Circuit authority. *See United States ex rel. Steury v. Cardinal Health Inc.*, 735 F.3d 202, 207 (5th Cir. 2013) (stating that "merely descriptive or conclusory allegations about the [] contracts were insufficient" and noting that general references to FAR provisions were "patently wanting"). These two fundamental failures—Relator's inaccurate premise that all FAR provisions apply and her inability to connect the FAR provisions she cites to actual contracts—preclude the new theory of liability outlined in the Sur-Reply and are emblematic of pleading deficiencies relating to her other allegations of FAR and DFARS violations.

### B.      Relator's New Theory Cannot Support An FCA Violation.

"The False Claims Act is not . . . a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016). At the pleading stage, the standard to infer a materially false statement from the failure to disclose an alleged regulatory non-compliance is "rigorous" and "demanding." *Id.* at 192, 194. Even assuming both that Relator actually alleged the theory outlined in her Sur-Reply and that Lockheed Martin was not in compliance with DFARS § 252.244-7001, this theory cannot support liability because Lockheed Martin still would have been entitled to receive payment.

DFARS § 252.244-7001 contains general guidelines for a prime contractor's purchasing system. It does not require strict compliance and instead provides for notice and an opportunity to cure before the government can take adverse action. *See* DFARS § 252.244-7001(d) (requiring the CO to provide notice of "significant deficiencies" and to consider the adequacy of "any proposed or completed corrective action" before making a final determination). The Fifth Circuit has held that the existence of a corrective action regime negates the falsity element because claims are false only when a defendant "is not entitled" to the money claimed, which necessarily "depends on the

contract, regulation, or statute" at issue. *See United States v. Southland Mgmt. Corp.,* 326 F.3d 669, 674-76 (5th Cir. 2003) (en banc) (holding that claims for payment are not false when ineligibility for reimbursement does not occur until after notice and a failure to remedy). Here, the withholding provision in DFARS § 252.244-7001 is temporary and does not trigger an outright denial of payments—once the contractor corrects the deficiencies, it is entitled to recover withheld payments. *See* DFARS § 252.244-7001(f) (providing for withholding of payments under certain circumstances pursuant to DFARS § 252.242-7005); DFARS § 252.242-7005(d)(3)(i) (providing for a maximum withholding of ten percent of each payment due while significant deficiencies exist); DFARS § 252.242-7005(f)(2)(iii) (providing that withholding will end and the contractor may recover all previously withheld amounts after providing evidence creating a reasonable expectation that the significant deficiencies have been or will be corrected). Consequently, under *Southland*, DFARS § 252.244-7001 cannot support an allegation of falsity.

Judge Jones' concurrence in *Southland* is consistent with *Escobar* and shows why Relator has also failed to plead the materiality element. *See Southland*, 326 F.3d at 679-81 (finding the presence of a corrective active regime is indicative of immateriality) (Jones, J., specially concurring).[4] Compliance with DFARS § 252.244-7001 is not a condition of payment because the

---

[4] Foreshadowing *Escobar*, Judge Jones characterized the materiality element as essential to prevent the elimination of "the crucial distinction between 'punitive' FCA liability and ordinary breaches of contract." *Southland*, 326 F.3d at 680; *cf. Escobar*, 579 U.S. at 194 (observing the FCA should not punish "garden-variety breaches of contract or regulatory violations"). She also explained that materiality should not turn solely on whether the government conditions payment on compliance and instead requires a "context-specific" examination focusing on what the government actually does with the information, including whether the government continues to pay with actual knowledge and whether it generally pays notwithstanding non-compliance. *Southland*, 326 F.3d at 679-80; *cf. Escobar*, 579 U.S. at 194-95 (identifying relevant considerations, including whether the provision is a condition of payment, whether the government paid with knowledge of the violation, and whether the government "regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position").

contractor remains entitled to payment even while significant deficiencies exist and is entitled to recoup any withholding after correcting those deficiencies. *See Escobar*, 579 U.S. at 194 ("[T]he Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive."). In other words, under the plain regulatory terms, the government pays the contractor even with full knowledge of significant deficiencies. *See id.* at 195 ("[I]f the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material."). Moreover, contractor purchasing systems are subject to periodic review. *See* FAR 44.302(b) (requiring the CO to determine "at least every three years . . . whether a purchasing system review is necessary"); FAR 44.304 (requiring ongoing surveillance to ensure the contractor is effectively managing purchasing).

Here, Relator does not allege that the government found deficiencies, that Lockheed Martin failed to remedy deficiencies, or that Lockheed Martin's purchasing system was ever disapproved—including during the nearly 3.5 years during which the government was aware of Relator's allegations from her initial *qui tam* but before she filed the operative Complaint in this case or thereafter. Relator has not alleged (and cannot plead) facts to plausibly support her theory that a violation of DFARS § 252.244-7001 supports a cause of action under the FCA.

### C.     The Theory Of Liability Outlined In The Sur-Reply Is Insufficient To Establish A Material Difference With The First-Filed Complaint.

Relator's Sur-Reply arguments confirm that her Complaint alleges the same material and essential elements as the complaint in the sealed, first-filed lawsuit. This requires dismissal under the FCA's first-to-file rule. *See* 31 U.S.C. § 3730(b)(5).

Previously, Relator sought to distinguish her Complaint by arguing that she alleges "numerous violations of the FAR that are entirely absent" in the first-filed complaint, including

violations of FAR 15.406-3. ECF No. 120 at 6. Lockheed Martin explained these allegations were irrelevant because the focus of the first-to-file analysis is on the government's investigation of the claims, not the underlying details. *See* ECF No. 122 at 3-5. But even under Relator's incorrect view of the law, she still loses. Because Relator's allegations of FAR violations—whether directly or indirectly in connection with other DFARS provisions—do not support a plausible FCA cause of action, her reliance on FAR provisions unconnected to any particular contract cannot save her claims under even her preferred first-to-file analysis.

**D.** **Relator's Factual Allegations Of Inducement Are Not Plausible Or Particular.**

Relator's Sur-Reply also highlights the absence of essential facts connecting the alleged violations to the government's decision to award the contracts at issue. Under her fraudulent inducement theory, Relator is required—but fails—to allege inducement. *See U.S. ex rel. Cimino v. IBM,* 3 F.4th 412, 419 (D.C. Cir. 2021) ("[L]iability under the FCA for fraudulent inducement must turn on whether the fraud caused the government to contract."); *United States ex rel. Weinberger v. Equifax, Inc.,* 557 F.2d 456, 460-61 (5th Cir. 1977) (requiring the relator to "demonstrate that the government was misled" when contracting with the defendant); *cf. United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) (holding that because the Anti-Kickback Statute requires actual inducement, a relator must plead "reliable indicia" of inducement). The Complaint is devoid of factual allegations regarding the government's negotiations with Lockheed Martin, and the sweeping conclusions in the Complaint and Relator's briefs are unsupported. *Cf. In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 565 (N.D. Tex. 2003) (noting that pleading with plausibility and particularity "is not an insurmountable task" if supporting facts exist and advising plaintiffs "to connect the dots and state with particularity facts, rather than hyperbole or conclusory statements.").

The gist of Relator's theory appears to be that Lockheed Martin creates Price Negotiation Memoranda ("PNMs") documenting negotiations with subcontractors and then submits them to the government as part of Lockheed Martin's prime contract proposals. *See* ECF No. 142 at 3; *e.g.*, ECF No. 1 at ¶¶ 70-72. For example, Relator alleges that Lockheed Martin "made false statements" in its PNM documenting negotiations with supplier Kongsberg Defence & Aerospace ("KDA") because Lockheed Martin omitted mention of an audit of KDA performed by DCAA, the government's audit agency. *Id.* But the regulations establish that PNMs are designed to document the basis for the negotiated agreement, not to recite every potentially relevant fact. *See* DFARS § 252.244-7001(c)(11) (requiring a purchasing system that "[d]ocument[s] negotiations in accordance with FAR 15.406-3); FAR 15.406-3 (providing that the PNM should document "the principal elements of the negotiated agreement"). And, the Complaint does not contain any plausible facts supporting inducement—only the baseless legal conclusion that the government was fraudulently induced. *See* ECF No. 1 at ¶ 72.

That the Complaint lacks any facts to support this conclusion necessitates dismissal, but Relator's arguments further demonstrate the implausibility of her theory. Relator asserts that Lockheed Martin's "inclusion of materially false statements in these PNMs violates the [FCA,]" ECF No. 142 at 3, but the FCA "is not 'an all-purpose antifraud statute.'" *Escobar*, 579 U.S. at 194 (*quoting Allison Engine Co. v. United States ex rel. Sanders*, 553 U. S. 662, 672 (2008)). Because Relator cannot connect the PNMs to any claim for payment, she argues instead that the government was fraudulently induced because the CO was "not equipped to review every audit provided by DCAA" and just relied on Lockheed Martin to negotiate reasonable subcontract

prices. ECF No. 120 at 19.[5] The applicable regulations, however, contradict this assertion. DCAA audits must be requested by the CO, not the prime contractor. *See* FAR 15.404-2(c)(1) ("The contracting officer should contact the cognizant audit office directly."). Once completed, DCAA must send the report to the CO, eliminating any plausible basis to conclude that the government did not have the report. *See id.* (requiring DCAA to provide "audit recommendations[] directly to the contracting officer"). And, the FAR requires the CO to analyze the reasonableness of subcontract prices independently rather than simply relying on the prime contractor. FAR 15.404-3 (providing that the CO "is responsible for the determination of a fair and reasonable price . . . including subcontracting costs"). Relator's unsupported contention that the CO was so pressed for time that the CO requested, but ignored, the DCAA audit report—thereby shirking the government's regulatory responsibility to analyze subcontractor pricing—defies common sense. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (instructing courts to draw on "common sense" in applying Rule 8's plausibility analysis). Because Relator has not pled plausible or particular facts to support inducement, her FCA claims must be dismissed under Rule 12(b)(6).

## III.    CONCLUSION

For the foregoing reasons, Lockheed Martin respectfully requests that the Court dismiss this case because the FCA's first-to-file rule bars jurisdiction and/or because Relator has not stated a claim for relief.

---

[5] Relator's brief cites paragraphs 6 and 71 in the Complaint to support this conclusion. But Paragraph 6 merely alleges the F-35 program is large and paragraph 71 does not include any facts remotely supporting Relator's argument.

Respectfully Submitted,

/s/ *Michael J. Bronson*
Michael J. Bronson
Ohio Bar No. 0074448
Joseph W. Harper
Ohio Bar No. 0079902
Patrick M. Hagan, *pro hac vice*
Ohio Bar No. 0079927
Chelsea J. Chalk, *pro hac vice*
Ohio Bar No. 0098056
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 977-8200
Fax: (513) 977-8141
Email: michael.bronson@dinsmore.com
        joe.harper@dinsmore.com
        patrick.hagan@dinsmore.com
        chelsea.chalk@dinsmore.com

*Trial Counsel for Defendant*
*Lockheed Martin Corporation*

Anthony J. Campiti
Texas Bar No. 00798092
HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Tel: (214) 969-1700
Fax: (214) 969-1751
Email: tony.campiti@hklaw.com

*Counsel for Defendant*
*Lockheed Martin Corporation*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2024, I electronically filed the foregoing document to the Clerk of Court for the United States District Court for the Northern District of Texas using the ECF System for filing. I hereby certify that I have served the document on all counsel by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

<u>*/s/ Michael J. Bronson*</u>
Michael J. Bronson