UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MARIA DEL CARMEN GAMBOA FERGUSON, ET AL., <br><br>    Plaintiff, <br><br> v. <br><br> LOCKHEED MARTIN CORPORATION, <br><br>    Defendant. | Civil Action No. 4:24-cv-00025-O |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendant's Renewed Motion to Dismiss, Brief in Support, and Appendix (ECF No. 101), filed January 31, 2024; Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, Brief in Support, and Appendix (ECF No. 120), filed February 16, 2024; Defendant's Reply in Support of Its Renewed Motion to Dismiss (ECF No. 122), filed March 1, 2024; Plaintiff's Sur-Reply in Opposition to Defendant's Renewed Motion to Dismiss (ECF No. 142), filed June 3, 2024; and Defendant's Sur-Sur-Reply in Support of Its Renewed Motion to Dismiss and Appendix (ECF Nos. 144, 145), filed June 7, 2024. For the reasons set forth herein, the Court **GRANTS** the Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1).

1

I.  **BACKGROUND**[1]

On February 07, 2020, *Qui Tam* Plaintiff/Relator Maria Del Carmen Gamboa Ferguson ("Plaintiff") brought this lawsuit on behalf and in the name of the United States of America ("the Government") and herself, individually, against Lockheed Martin Corporation ("Defendant") in federal district court in the Eastern District of Texas, alleging violations of the False Claims Act ("FCA"), specifically, 31 U.S.C. § 3729(a)(1). The development of this case—and how it ended up in the Northern District—follows a long, meandering path.

Plaintiff is an auditor who was employed at Lockheed Martin Corporation from 2005 until June 2018, where she worked as Director of Internal Audit and Senior Manager for the Subcontract Audit group. Plaintiff's responsibilities included auditing subcontractors that supplied parts and labor for various aircrafts, ensuring that subcontractors and Defendant complied with the Federal Acquisitions Regulation ("FAR") and the Truth in Negotiations Act ("TINA"). Defendant Lockheed Martin Corporation is the world's largest defense contractor. Defendant is responsible for assembling and providing aircraft to the Government, relying in-part on subcontractors to help manufacture parts. Defendant is the Government's primary contractor for the F-35 Joint Strike Fighter, the F-22 Raptor, the F-16 Fighting Falcon, and the C-130J Hercules.

While this action was filed by Plaintiff in February 2020, this case started long before then. Plaintiff first filed an FCA complaint against Defendant in the Northern District of Texas, Dallas Division in October 2016. Plaintiff filed a second complaint against Defendant on December 16, 2016, and a third complaint on March 7, 2017. Each of these complaints obligated the Department of Justice ("DOJ") to investigate Plaintiff's claims. The DOJ, in response to Plaintiff's first complaint filed in 2016, issued a Civil Investigative Demand to Defendant but elected not to

---

[1] Unless otherwise noted, the facts recited herein are drawn from Defendant's Renewed Motion to Dismiss, supplemented by Plaintiff's Complaint. *See* Def.'s Renewed Mot. Dismiss, ECF No. 101; Pl.'s Compl., ECF No. 1.

2

intervene, filing a notice of non-intervention. DOJ also filed a second notice of non-intervention regarding Plaintiff's second and third complaints.

Plaintiff filed a fourth complaint on March 25, 2019, this time alleging FCA "retaliation." Plaintiff's four separate complaints were eventually consolidated upon Defendant's request. Following the consolidation, Plaintiff filed an amended complaint. Here too, DOJ elected—for a third time—not to intervene. Subsequently, on February 7, 2020, Plaintiff voluntarily dismissed its amended complaint—which at that time was the only pending action against Defendant. That same day, Plaintiff re-filed in the Eastern District of Texas. Because this new lawsuit was filed in a different district, a new DOJ team—the U.S.'s Attorney's Office for the Eastern District of Texas—investigated Plaintiff's allegations. Once again, a notice of non-intervention was filed. On February 17, 2023, Defendant filed a motion to transfer venue from the Eastern District to the Northern District, or, in the alternative, to have the Court dismiss. On December 18, 2023, the Eastern District granted the motion to transfer venue but declined to rule on Defendant's motion to dismiss. The case was then transferred to this district.

Defendant claims here, in its Renewed Motion to Dismiss, that the FCA's "first-to-file" rule—31 U.S.C. § 3730(b)(5)—bars this court from having jurisdiction over this case. Defendant specifically asserts that because Plaintiff's complaint shares similarities with a previously filed action (hereinafter "Girard," or "the Girard case"), the first-to-file bar is triggered. Consequently, Defendant asks the Court to dismiss this case on jurisdictional grounds. Defendant moves now for a full dismissal of Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Following completion of the parties' briefing, that Motion is now ripe for the Court's review.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and must have "statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Generally, the party invoking the jurisdiction bears the burden of demonstrating that jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (explaining that the plaintiff "has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction"). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

Defendants may challenge the court's authority to hear a dispute under Federal Rules of Civil Procedure Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Courts may dismiss for lack of subject matter jurisdiction on any of three separate grounds: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (internal citation and quotation marks omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Generally, when a 12(b)(1) motion is brought with other Rule 12 motions to dismiss, the 12(b)(1) motion must be addressed first. *See id.* ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional

4

attack before addressing any attack on the merits."). Thus, the Court analyzes Defendant's Rule 12(b)(1) motion separately before analyzing Defendant's Rule 12(b)(6) motion. Because the Court finds proper grounds for granting dismissal under 12(b)(1), the Court does not analyze Defendant's Rule 12(b)(6) motion.

III.    ANALYSIS

    A.   **Defendant Asserts That Plaintiff is Jurisdictionally "Barred" Under the False Claim Act's First-To-File Provision**

        i.   *The False Claims Act's "Qui Tam" Provisions*

The False Claims Act ("FCA") "imposes civil liability on any person who 'knowingly presents . . . a false or fraudulent claim for payment or approval,' or 'knowingly makes [or] uses . . . a false record or statement material to a false or fraudulent claim.'" *United States ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 271 (5th Cir. 2021) (alterations in original) (quoting 31 U.S.C. § 3729(a)(1)(A), (B)). "The FCA permits private parties to enforce the statute by filing *qui tam* suits 'in the name of the Government' . . . ."[2] *Id.* (quoting 31 U.S.C. § 3730(b)(1)). Certainly, the FCA was "meant to 'encourage more private enforcement suits.'" *State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 580 U.S. 26, 34 (2016) (quoting S. Rep. No. 99–345, pp. 23–24). In a *qui tam* action, the United States is entitled, but not required, to intervene and take over the prosecution of the case. *See* 31 U.S.C. § 3730(b)(2). The Fifth Circuit has provided the following regarding the FCA's *qui tam* provisions:

> The history of the FCA's *qui tam* provisions demonstrates repeated attempts by Congress to balance two competing policy goals. On the one hand, the provisions seek to encourage whistleblowers with genuinely valuable information to act as private attorneys general in bringing suits for the common good. On the other hand, the provisions seek to discourage opportunistic plaintiffs from filing parasitic

---

[2] "*Qui tam* is part of the longer Latin phrase '*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 976 n. 1 (6th Cir. 2005) (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769 n. 1 (2000)).

5

lawsuits that merely feed off previous disclosures of fraud. To promote the latter goal, Congress has placed a number of jurisdictional limits on the FCA's *qui tam* provisions, including § 3730(b)(5)'s *first-to-file bar*.

*United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009) (citations omitted) (third emphasis added); *see also Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 721 (5th Cir. 2010) ("The two competing policy goals of § 3730(b) are to encourage whistleblowing and to discourage opportunistic behavior." (citing *Branch*, 560 F.3d at 376)).

### ii. The False Claims Act's "First-to-File" Bar

The FCA's "first-to-file bar"—Section 3730(b)(5)—provides in full:

> When a person brings an action under this subsection, no person other than the Government may intervene or bring a *related action based on the facts underlying the pending action*.

31 U.S.C. § 3730(b)(5) (emphasis added). "In the Fifth Circuit, the first-to-file bar is jurisdictional." *United States ex rel. Edgett v. Kimberly-Clark Corp.*, No. 3:15-CV-0434-B, 2017 WL 4222697, at *3 (N.D. Tex. Sept. 22, 2017) (citing *Branch*, 560 F.3d at 377). The Fifth Circuit has held that "[t]he first-to-file bar is a relatively broad bar to later-filed actions." *United States v. Planned Parenthood of Hous.*, 570 F. App'x 386, 389 (5th Cir. 2014) (citing *Branch*, 560 F.3d at 377). In interpreting the first-to-file bar as "relatively broad," the Fifth Circuit reasoned that "a 'broader bar' furthers the purpose of the FCA's *qui tam* provisions by ensuring a 'race to the courthouse among eligible relators, which may spur the prompt reporting of fraud.'" *Planned Parenthood*, 570 F. App'x at 389 (quoting *Branch*, 560 F.3d at 377 (citing *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir.1998))). The Fifth Circuit's "broader bar" standard is consistent with "the general rule . . . that a second-filed 'related action' need not be based on identical facts to fall under the § 3730(b)(5) bar." *United States ex rel. Wright v. AGIP Petroleum Co.*, No. 5:03-CV-264(DF), 2007 WL 9759050, at *7 (E.D. Tex.

6

Feb. 15, 2007); *see also id.* (noting too that "every circuit to address the issue has rejected the 'identical facts' test" (citing *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279-80 (10th Cir. 2004))).

However, the first-to-file bar—while broad—is limited to only certain cases. Specifically, the Fifth Circuit has held that "the applicability of § 3730(b)(5) should be determined under an 'essential facts' or 'material elements' standard."[3] *Branch*, 560 F.3d at 378. Courts have long grappled with how to interpret the first-to-file bar, particularly regarding the application of the essential elements standard. *See United States ex rel. Mitchell v. CIT Bank, N.A.*, No. 4:14-CV-00833, 2022 WL 812364, at *5 (E.D. Tex. Mar. 16, 2022) (noting that while this "rule *seems* simple . . . application of the rule is not so simple" (emphasis added)); *see also* Chelsea Ogan, *The False Claims Act's First-to-File Provision: How Courts Should Apply the Essential Facts Test*, 60 Hous. L. Rev. 233, 236 (2022) ("[C]ircuit courts disagree on how to apply the essential facts test, with some courts applying the test broadly while others apply the test more narrowly."). One court noted prior to the Fifth Circuit's *Branch* decision that "courts have not established steadfast elements to determine when § 3730(b)(5) bars a second-filed *qui tam* suit based on the same 'material facts.'" *Wright*, 2007 WL 9759050, at *7. Presently the Fifth Circuit has not established steadfast elements. Still, the Fifth Circuit has undeniably chosen to land on the side of broader application. *See, e.g.*, 60 Hous. L. Rev. at 250 (citing *Branch* as an example application of "the

---

[3] This "standard," the Court recognizes, has been referred to by other courts in rather inconsistent fashion. *Branch* notes that the Third and Sixth Circuit use the language "*essential facts*." *See Branch*, 560 F.3d at 377 (citing to *LaCorte*, 149 F.3d 227 and *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (6th Cir. 2005)). *Branch* notes that the Ninth and Tenth Circuit use the language "*material elements*." *See id.* (citing to *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181 (9th Cir. 2001) and *Grynberg*, 390 F.3d at 1279). But *Branch* notes that "[n]othing in *Lujan* indicates that the Ninth Circuit meant the phrase 'same *material elements* of fraud' to be construed differently than *LaCorte*'s phrase 'all the *essential facts*' of the fraud, especially since the Ninth Circuit found *LaCorte'*s 'reasoning persuasive' as to the proper test under § 3730(b)(5)." *Branch*, 560 F.3d at 378 n. 9 (emphasis added). For the sake of consistency, the Court generally refers to this standard as the "*essential elements standard*," or the "*essential elements or material facts standard*."

7

broad standard"). The Fifth Circuit has clarified some aspects of this standard, providing, for example, that plaintiffs "cannot avoid § 3730(b)(5)'s jurisdictional bar by merely adding details and geographic locations to the material allegations contained in [a previously-filed FCA action]." *Branch*, 560 F.3d at 373. The Fifth Circuit further provided in *Planned Parenthood* that "[t]he focus is . . . whether an investigation into the first claim would uncover the same fraudulent activity alleged in the second claim." *Planned Parenthood*, 570 Fed. App'x. at 389. The Court uses *Branch* and *Planned Parenthood* as steppingstones—alongside other cases—in determining how to apply the standard here.

### iii. Discussion

The issue before the Court is whether Plaintiff's Complaint[4] constitutes "a related action based on the facts underlying the pending action" as defined under 31 U.S.C. § 3730(b)(5). If the Plaintiff's Complaint is related, then the Court should dismiss the present action.

#### a. Stare Decisis Binds the Court to Fifth Circuit Precedent

Naturally, before determining whether the statutory first-to-file bar applies to Plaintiff's complaint, the Court must determine its proper interpretation. *See LaCorte*, 149 F.3d at 232 (noting that before it could address whether application of the first-to-file rule was appropriate, and more specifically whether it had been misapplied, the Court "must determine the proper interpretation of that provision"). In interpreting the first-to-file bar, the Court is adheres to Fifth Circuit precedent.[5] Consequently, even if the "the plain language" of the FCA seems to convey one thing

---

[4] The Court refers to both Plaintiff's Complaint and Plaintiff's "action" interchangeably. *But cf. United States ex rel. Shea v. Verizon Commc'ns, Inc.*, 160 F.Supp.3d 16, 30 (D.D.C. 2015) ("The first-to-file bar prohibits bringing a 'related action,' not a related complaint . . . . No matter how many times [a later-filing plaintiff] amends his Complaint, it will still be true that he brought a related action based on the facts underlying the then pending action." (emphasis in original) (internal quotation marks, brackets, and citation omitted)), *aff'd sub nom*, *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923.
[5] *See Provines v. Wilson*, No. 4:20-CV-475-O, 2020 WL 2762563, at *2 (N.D. Tex. May 20, 2020) (O'Connor, J.) ("[T]his Court is bound by Fifth Circuit precedent."); *Castro v. United States*, No. 4:22-CV-00016-O-BP, 2023 WL 3848386, at *2 (N.D. Tex. June 6, 2023) (O'Connor, J.) ("[T]his Court is bound by Fifth Circuit precedent and may

but the Fifth Circuit has expressly held differently, the Court must not depart from Fifth Circuit precedent. *E.g.*, *United States ex rel. Mitchell v. CIT Bank, N.A.*, No. 4:14-CV-00833, 2022 WL 812364, at *7 (E.D. Tex. Mar. 16, 2022) (Mazzant, J.) (noting that while "the plain language of § 3730(b)(5) seems to bar all later-filed related actions," the Fifth Circuit has "unequivocal[ly] held [oppositely]," and thus "this Court is bound by the principle of stare decisis to follow [the Fifth Circuit's] holding") (emphasis added) (internal quotation marks omitted).

In following the guiding principle of stare decisis, the Court must analyze whether the first-to-file bar applies using primarily—and, if possible, solely—the essential elements standard set by the Fifth Circuit in *Branch*. *See United States ex rel. Mitchell v. CIT Bank, N.A.*, No. 4:14-CV-00833, 2022 WL 812364, at *7 (deciding that whether an action constitutes an impermissible attempt to "bring a related action based on facts underlying the pending action under 31 U.S.C. § 3730(b)(5)," on the one hand, "this determination presents a question of statutory interpretation"; on the other hand, "this Court is obliged to follow the decisions of the Fifth Circuit"; and ultimately concluding that "because the Fifth Circuit's interpretation of the first-to-file bar is clear, the Court must adhere to Fifth Circuit precedent in properly interpreting § 3730(b)(5)" (cleaned up)). The Fifth Circuit's essential elements standard is the crux of the issue before the Court, and as such, the Court refrains from analyzing in detail either party's purported methods of statutory interpretation.[6]

      b.    <u>The Essential Elements Standard</u>

---

not simply ignore such rulings or choose not to apply them." (citing *United States v. Mosley*, No. 4:23-CR-0041-P, 2023 WL 2777473, at *2 (N.D. Tex. Apr. 4, 2023))), *aff'd*, No. 23-10630, 2023 WL 8825316 (5th Cir. Dec. 21, 2023), *cert. denied*, No. 23-1144, 2024 WL 2805766 (U.S. June 3, 2024); *see also Law v. Hunt Cnty., Texas*, 830 F. Supp. 2d 211, 216 (N.D. Tex. 2011) ("[T]his court will not deviate from Fifth Circuit precedent unless there are clear legal grounds to do so.").

[6] Defendant—and Plaintiff to a limited extent—cites to a variety of statutory interpretation techniques and dictionary definitions. *See* Def.'s Renewed Mot. Dismiss 11-12, ECF No. 101; Pl.'s Resp. Opp'n Def.'s Mot. Dismiss 8-9, ECF No. 120. The Court, borrowing from *Wright*, hesitates to conflate what is already a complicated matter with interpreting and applying statutory canons of construction, particularly within the context of the FCA.

Whether two complaints are "related" under Section 3730(b)(5) is determined under an essential elements standard.[7] *See Branch*, 560 F.3d at 378. Instead of analyzing whether Plaintiff's Complaint falls under any number of definitions regarding "relatedness," the Court focuses foremost on whether Plaintiff's Complaint includes the same essential elements or material facts as *Girard*. *See id.*; *accord Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 971 (6th Cir. 2005) ("In deciding whether [Plaintiff's] action runs afoul of [the first-to-file] bar, we compare [its] complaint with [the previously-filed action]." (citing *La Corte*, 149 F.3d at 234)).

While the Fifth Circuit established that the essential elements standard must be applied, it did not provide a bright line test for what constitutes essential elements. Still, the Fifth Circuit has provided *some* guidance regarding this standard, namely that plaintiffs "cannot avoid § 3e730(b)(5)'s jurisdictional bar by merely adding details and geographic locations to the material allegations contained in [a previously-filed FCA action]." *Branch*, 560 F.3d at 373.[8] Additionally, the Fifth Circuit has recently illustrated that "[t]he focus is on whether an investigation into the first claim would uncover the *same fraudulent activity* alleged in the second claim." *Planned Parenthood*, 570 F. App'x at 389 (emphasis added). Accordingly, the Court will look outside the Fifth Circuit precedent to fill in precedential gaps.

---

[7] *Branch* uses the language "essential facts" to refer the standard now adopted by all but one of the circuit courts. As noted previously, the Court opts to use "essential elements or material facts," or in short "essential elements," and different ways of describing this "standard" should be considered one and the same. *See supra* note 3.

[8] *See also id.* at 378 (stating—in slightly different terms—that plaintiffs "cannot avoid § 3730(b)(5)'s first-to-file bar by simply adding factual details *or* geographic locations to the essential or material elements of a fraud claim against the same defendant described in a prior compliant") (emphasis added); *accord United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 181 (4th Cir. 2013) (agreeing that "differences in specifics—such as geographic location *or* added facts—will not save a subsequent case" from being barred under the first-to-file rule) (emphasis added), *aff'd in part, rev'd in part*, *Kellogg Brown & Root Servs., Inc. v. United States, ex rel. Carter*, 575 U.S. 650 (2015).

One case, *United States ex rel. Wright v. AGIP Petroleum Co.*, significantly clarified the application of this standard.[9] *See* 2007 WL 9759050, at *1 (E.D. Tex. Feb. 15, 2007). While *Wright* was decided two years prior to the Fifth Circuit's decision in *Branch*, it weighed—in detail—slightly different approaches in determining whether a later-filed *qui tam* suit was barred under the first-to-file rule. *See Wright*, 2007 WL 9759050 at *7 (noting that "courts have not established steadfast elements to determine when § 3730(b)(5) bars a second-filed qui tam suit based on the same 'material facts.'"). Specifically, *Wright* weighed whether to apply the essential elements test narrowly or broadly, identifying that, in one case ("*Erickson*"), the court found that "[a] subsequently filed *qui tam* suit may continue only to the extent that it [1] is based on facts different from those alleged in the prior suits and [2] gives rise to separate and distinct recovery by the government." *Id.* (citing *Erickson ex rel. United States v. Am. Inst. of Biological Sci.*, 716 F. Supp. 908, 918 (E.D. Va. 1989)). While in another case ("*Capella*"), the court held that "section 3730(b)(5) bars a later claim unless (1) it alleges a *different type of wrongdoing*, based on different material facts than those alleged in the earlier suit; and (2) it gives rise to a separate recovery of *actual damages* by the government." *Id.* (citing *United States ex rel. Capella v. United Techs. Corp.*, 1999 WL 464536, at *9 (D. Conn. 1999)) (emphasis added). Importantly, under the *Capella* standard, the facts need not just be materially different, but they also must allege a "different type of wrongdoing." *See Capella*, 1999 WL 464536, at *9. This more stringent requirement on the Plaintiff that would require courts to inquire not only whether the later-filed complaint "allege[s] a different type of wrongdoing," but also determine that such wrongdoing was "based on different

---

[9] *Wright* uses only the language "material facts," but, as mentioned previously, courts have often conflated the terms "essential elements," "essential facts," "material elements," and "material facts," and the Court here considers these to be one and the same. *Cf. Branch*, 560 F.3d at 378 n. 9

11

material facts". Put simply, under *Capella*, when both actions alleged just "the same kind of wrongdoing," the later-filed action is barred under the first-to-file rule.

Against this backdrop, *Wright* combined the standards in *Erickson* and *Cappella* and held that that "[a] later-filed *qui tam* complaint is barred unless (1) it alleges a different type of wrongdoing, based on different material facts than those alleged in the earlier suit; and (2) it gives rise to separate and distinct recovery by the government." *Wright*, 2007 WL 9759050, at *7.[10] *See Wright,* No. 5:03-CV-264(DF), 2007 WL 9759050, at *7 *(adopting a combined standard first used in United States ex rel. Ortega v. Columbia Healthcare, Inc.,* 240 F. Supp. 2d 8 (D.D.C. 2003)); *accord Ortega,* 240 F. Supp. 2d at 13 (D.D.C. 2003) (refusing "[to] adopt either the Erickson or Capella tests wholesale," and instead deciding to "combine them").

While the Fifth Circuit has not expressly adopted the exact language "a different type wrongdoing," its holdings and analysis of the "first-to-file" bar is consistent with the broad standard illuminated in *Wright*.[11] Moreover, the Fifth Circuit's holdings and *Wright & Ortega* both heavily base their analysis on the Third Circuit's reasoning in *LaCorte*, which was the first federal appellate case to adopt the essential elements test.[12] Thus, the Court's analysis is in-part guided by

---

[10] The court in *Ortega* held that "*Capella* supplies the first element," noting specifically that "[t]he first element . . . is the most important; an examination of possible recovery merely aids in the determination of whether the later-filed complaint alleges a different type of wrongdoing on new and different material facts." *Ortega*, 240 F. Supp. 2d 13. As the court in *Wright* illustrates, "*Ortega* found this two-prong approach best for evaluating the first-to-file bar because it considers the factual basis for wrongdoing under the FCA, as well as the goal of securing the government's recovery." *Wright*, 2007 WL 9759050, at *8.

[11] *Compare Ortega*, 240 F. Supp. 2d at 13 (reasoning that "duplicative claims do not help reduce fraud or return funds to the federal fisc, since once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds") *and U.S. ex rel. Batiste v. SLM Corp.*, 740 F. Supp. 2d 98, 102 (D.D.C. 2010) ("By focusing not only on the underlying facts, but on the type of wrongdoing, this test does justice to the language of Section 3730(b)(5) barring subsequent 'related' actions. In so doing, the test prevents the less vigilant whistle-blower from using insignificant factual variations to allege what is essentially the same fraudulent scheme already made known to the government by an earlier whistle-blower.") aff'd, 659 F.3d 1204 (D.C. Cir. 2011) *with Planned Parenthood*, 570 F. App'x at 389 (reasoning that "[t]he focus is on whether an investigation into the first claim would uncover the same fraudulent activity alleged in the second claim" and that "merely feed[ing] off previous disclosures of fraud" is "discouraged").

[12] *Compare LaCorte*, 149 F.3d at 234 ("[T]he overly narrow interpretation [would enable] dozens of relators [to] expect to share a recovery for the same conduct, [thus] decreasing . . . incentive to bring a *qui tam* action in the first place. By contrast, interpreting section 3730(b)(5) as imposing a broader bar furthers the Act's purpose by

answering whether Plaintiff here "alleged a different type of wrongdoing, based on different material facts," in essence encompassing the reasoning and application used in *Wright* and *Ortega* to brightly illuminate the Fifth Circuit's holdings in *Branch* and *Planned Parenthood*.

        c.    <u>Applying the Essential Elements Standard to Plaintiff's Case by Comparing Plaintiff's Complaint to *Girard*</u>

Notably, Defendant in its Motion to Dismiss doesn't initially broach the Fifth Circuit's essential elements test. But in arguing that Plaintiff's Complaint is "related" to *Girard*, Defendant notes the "obvious . . . similarities between the cases," specifically that both cases "allege [Defendant] violated TINA in its proposals for the F-35 program."[13] Namely, the "general references to F-35 'Low Rate Initial Production' ('LRIP') lots 4 through 11" in Plaintiff's Complaint "overlap significantly" with "the first-filed complaint, which asserts FCA and TINA violations associated with LRIP lots 7 through 9, as well as violations continuing after [Plaintiff's] departure [working for Defendant]."[14] In drawing a comparison to the Fifth Circuit's decisions in both *Branch* and *Planned Parenthood*, Defendant connects the dots by noting "different or additional details is irrelevant; dismissal under the first-to-file bar is necessary even when the latter-filed complaint alleges 'additional instances of fraud occurring in other geographic locations,' or allegations involving different government healthcare programs."[15] Defendant illustrates most strongly why Plaintiff's complaint should be barred, explaining that "an

---

encouraging *qui tam* plaintiffs to report fraud promptly.") *with Branch*, 560 F.3d at 378 ("Any construction of § 3730(b)(5) that focused on the details of the later-filed action would allow an infinite number of copycat *qui tam* actions to proceed so long as the relator in each case alleged one additional instance of the previously exposed fraud. This result cannot be reconciled with § 3730(b)(5)'s goal of preventing parasitic *qui tam* lawsuits.").

[13] *See* Def.'s Renewed Mot. Dismiss 14, ECF No. 101 (noting that both actions "allege[] FCA violations arising out of [Defendant's] violations of 'the Truth In Negotiations Act ("TINA"), 10 U.S.C. § 2306(a) and 41 U.S.C. 254(b)(a)(2)[,] and FAR 15.404-3").

[14] *Id*.

[15] *Id.* at 15.

investigation of the first-filed complaint necessarily led the government in the *same direction* as Plaintiff's allegations."[16] The Court is inclined to agree.

Moreover, Defendant contends that "[t]he best evidence that the first-to-file rule bars this action comes from Plaintiff's own representations in this case."[17] As Defendant notes, Plaintiff "has repeatedly asserted" that this case and a previously filed FCA case—*Girard*—are "related."[18] Moreover, as Defendant points out, Plaintiff has previously conceded that its case and another were not just "related" but "*substantially* related."[19] And, Plaintiff has scrupulously identified the similarities between its Complaint and *Girard*, in part providing that:

> Both actions involve allegations of false claims, statements or records, false certifications, and/or fraudulent inducement by [Defendant] in its conduct of and leadup to price negotiations with the United States' Department of Defense across multiple procurement contracts with the Government. Both actions allege that [Defendant] failed to provide the Government with accurate complete, and current cost or pricing information as required by the Truth in Negotiations Act and the Federal Acquisition Regulation.[20]

Additionally, Defendant points to Plaintiff's highlighting the "parallel nature of the two cases," specifically the "common investigative focus . . . [and] numerous instances of failing to comply with mandates of the Truth in Negotiations Act."[21] Here, Defendant's magnification of Plaintiff's own words serve to support that both actions undoubtedly allege the "same type of wrongdoing," and likewise must be interpreted as including the same essential elements.

While Plaintiff specifically takes note that "the Fifth Circuit uses an 'essential facts' or 'material elements' standard,"— referred to (or "renamed") by the Court here as the "essential

---

[16] *Id.* (emphasis added) (citing *Planned Parenthood*, 570 F. App'x at 389 ("The focus is on whether an investigation into the first claim would uncover the same fraudulent activity alleged in the second claim."); *Branch*, 560 F.3d at 378 ("[O]nce the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds."))
[17] Def.'s Renewed Mot. Dismiss 9, ECF No. 101
[18] *Id.* (citing to Case Transfer, ECF No. 27; Transfer Order, ECF No. 89).
[19] Def.'s Mot. Dismiss; Pls.' Mot. To Reconsider Random Assignment 2, ECF No. 24 (emphasis added)
[20] Pls.' Mot. Recons. Random Assignment 2, ECF No. 24
[21] *Id.* at 3.

14

elements standard"—Plaintiff argues that "[c]omparing the two complaints reveals that [Plaintiff] alleges none of the same essential facts or material elements that Girard alleged."[22] The Court strongly disagrees. Plaintiff delves into a deep—but mostly irrelevant—analysis of what it believes to be several key distinguishing essential elements. Plaintiff's arguments identifying purported differences between its Complaint and *Girard* are summarized as follows:

> (1) Order of Proof**:**
> Girard's case will require proving Defendant ordered higher volumes of equipment to receive discounted prices but still charged the Government the higher, undiscounted prices. Plaintiff's case requires examining a wide swath of data covering labor and material and multiple different aircraft programs, submitted by the contractors, and Defendant's knowledge and certifications regarding that data.
> (2) Key Documents:
> Girard will rely primarily on purchase orders for specific pieces of equipment and compare those with invoices sent to the Government. Plaintiff will rely primarily on the subcontractors' proposals, Defendant's internal memoranda examining subcontractors' direct costs, reports examine the subcontractors' indirect costs and account systems and TINA Certifications.
> (3) Specific FAR Violations:
> Numerous violations of the FAR that Plaintiff alleges are entirely absent in Girard, including FAR §§ 15.404 (requiring Lockheed to perform an adequate cost analysis on its subcontractors), 15.406-3 (requiring Defendant to document the principal elements of the negotiated agreement in the Price Negotiation Memorandum), and 31.295 (FAR's cost principles provision).
> (4) Witnesses:
> No witnesses from *Girard* have relevant knowledge in Plaintiff's case.
> (5) Different Aircraft:
> Neither the F-16, F-22, or C-130 aircraft programs Plaintiff alleges fraud in are at issue in Girard's case.[23]

These distinctions—what Plaintiff attempts to squeeze under the definition of different essential elements—are mostly irrelevant to the issue at hand, but the Court nonetheless discusses them in whole.

---

[22] Pls.' Opp'n Def's Mot. Dismiss 5, ECF No. 120 (quoting U*nited States Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543, 2015 WL 4039929, at *5 (E.D. Tex. July 1, 2015))
[23] *See id.* 6-7

First, Plaintiff's argument regarding order of proof attempts falls flat. The order of proof may be different, but a difference in the order of proof does not give rise to a different "type of wrongdoing," as illustrated in *Wright* and *Ortega*. While Plaintiff's case and *Girard* may require different orders of proof, the Court's focus point is that both cases involve the same allegations of fraud. Whether this fraud is manifested through the "ordering [of] higher volumes of equipment, . . . inflat[ing] the costs associated . . . and charg[ing] the Government the higher prices,"[24] as alleged in *Girard*, or knowingly certifying false or incorrect data regarding labor and materials "that subcontractors [had] submitted to [Defendant],"[25] as alleged in Plaintiff's Complaint, the "type of wrongdoing" is the same: Defendant fraudulently overcharged the government in regard to its aircraft programs.

Second, Plaintiff's argument regarding key documents is irrelevant. For the reasons similarly stated above, mere differences in what Plaintiff qualifies as "key" documents do not demonstrate that the Government—in potentially investigating *Girard*—would not have been led to the fraud alleged in Plaintiff's Complaint. Although the Government may not have immediately requested and examined documents Plaintiff asserts as "key"—i.e., subcontractors' proposals, internal memoranda group reports, and TINA Certifications—the Court finds that such documents would have likely found themselves within the government's purview stemming from a competently-completed investigation of *Girard*. Specifically, by examining the "purchase orders for specific pieces of equipment and comparing them with the invoices sent to the Government,"[26] the Court is convinced that the Government would have likely been led to to the fraud alleged by Plaintiff here. More importantly, the Court finds that the "type of wrongdoing" alleged in both

---

[24] Pl.'s Resp. Opp'n Def.'s Mot. Dismiss 6, ECF No. 120
[25] *See id.*
[26] *Id.* 6

Case 4:24-cv-00025-O   Document 160   Filed 07/16/24   Page 17 of 20   PageID 2609

Plaintiff's Complaint and *Girard* is the same: Defendant fraudulently overcharged the government relating to several of its aircraft programs.

Third, Plaintiff's point that different violations of the FAR alleged here are not alleged in *Girard* is cursorily dismissed. Admittedly, as Plaintiff points out, if "the underlying allegations of fraud in the complaints do not allege violations of the same statutes," the Court may find that "the allegations of fraud in the two complaints do not have the same essential elements, and thus[] reject [the] contention that the Government had 'enough information to discover' the fraud alleged in [the first-filed] complaint." *United States ex rel. Smart v. Health*, 563 F. App'x 314, 315 (5th Cir. 2014) (citing *Branch*, 560 F.3d at 378). But, as Defendant notes in its Reply, *Smart* is not applicable to the case at hand.[27] Both Plaintiff's Complaint and *Girard* allege violations of the same statutes (albeit different sections), specifically "TINA violations" that "fraudulently induced the government to contract at an inflated price."[28] Thus, the allegations of fraud in the two complaints are still considered to have the same essential elements.

Fourth, Plaintiff's argument regarding different witnesses is questionably relevant at best. Undoubtedly, two complaints can involve the same material facts and essential elements but involve completely different witnesses. The Court does not find merit in Plaintiff's argument that a mere difference in witnesses is sufficient to constitute different essential elements. Nor does the Court find that different witnesses support that a "different type of wrongdoing" occurred. *Cf. Halliburton*, 710 F.3d at 182 (finding that "different types of employees" and "different divisions" were insufficient to differentiate a later-filed action from an earlier-filed one).

---

[27] *See* Def.'s Reply Supp. Mot. Dismiss 4, ECF No. 122
[28] *See Id.*

Fifth, Plaintiff points out that "none of the aircraft" (referring the F-16, F-22, and C-130 aircraft programs) are at issue in *Girard*, and thus the first-to-file bar cannot apply.[29] The Court is not persuaded by this argument. The mere addition of a few additional aircraft programs is not sufficient to separate and distinguish Plaintiff's claim from *Girard*. Taking into account why the first-to-file bar exists,[30] and that Plaintiff concedes that its Complaint and *Girard* "involve[] three of the same F-35 contracts."[31] The inclusion of new programs does not sufficiently constitute different essential elements. Even when Plaintiff attempts to carve out distinguishing differences,[32] reaching such determination would be unreasonable and would further violate the purpose of the first-to-file bar and the FCA generally. Indeed, Defendant is a large corporation; but the F-16, F-22, and C-130 aircraft programs remain within the same realm as the F-35 aircraft programs mentioned first in *Girard*. The Government, in investigating the alleged fraud regarding the F-35 contracts in *Girard*, would naturally have been led the "same type of fraud" alleged regarding the F-16, F-22, and C-130 aircraft programs, or any other one of Defendant's many aircraft programs. The Fifth Circuit standard—indisputably—is inclusively broad in this regard. Even if Plaintiff were to allege "new" fraud regarding, for example, Defendant's non-aircraft programs, as long as the type of fraud was generally the same (i.e., involving TINA and FAR violations), the Court would remain hesitant in rubber-stamping Plaintiff's entire Complaint or action as now having included different "material facts" or alleged a completely "different type of wrongdoing." Accordingly, Plaintiff's Complaint does not contain different essential elements or material facts.

---

[29] *See* Pl.'s Resp. Opp'n Def.'s Mot. Dismiss 7, ECF No. 120
[30] *See Branch*, 560 F.3d at 377 (Reasoning that the first-to-file bar "attempt[s] to achieve 'the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own'" (quoting *LaCorte*, 149 F.3d at 234)).
[31] *See* Pl.'s Resp. Opp'n Def.'s Mot. Dismiss 7, ECF No. 120 (describing the F-35 contracts—which make up exactly half of the programs brought forth in Plaintiff's Complaint—as just mere "overlap.")
[32] *See id.* 7-8 (qualifying Plaintiff's action as a "much broader fraud")

The Court also considers whether Plaintiff's claims here are "duplicative" in the sense that they "do not help reduce fraud or return funds to the federal fisc." *Ortega*, 240 F. Supp. 2d at 13. The Court notes that both Plaintiff's Complaint and *Girard* "allege that TINA violations fraudulently induced the government to contract at an inflated price."[33] While Plaintiff professes that the details of Lockheed's alleged failures differ between the two cases, the distinction Plaintiff attempts to draw is seemingly minute. Paraphrasing Plaintiff's own contrasts of the two cases,

> Plaintiff alleges that Defendant failed to provide mandated, relevant cost or pricing information of subcontractors, or failed to provide accurate, complete, and current cost or pricing information as mandated by the Federal Acquisition Regulation ("FAR"), while certifying that such (accurate) information was provided.
>
> . . .
>
> *Girard* alleges that Defendant failed to provide accurate, complete, and current cost or pricing information, because it provided the cost for one or a small number of a particular part but purchased the part in volume decreasing its costs without notifying the Government.[34]

Indeed, there indisputably appears to be a difference of details—albeit minor—between the two complaints. But in whole, both actions allege that Defendants failed to provide mandated, relevant cost or pricing information of its subcontractors, or failed to provide accurate, complete, and current cost or pricing information. Mere marginal differences here—i.e., different specific violations of the FAR or slight factual changes regarding the alleged TINA violations—are irrelevant. The Fifth Circuit has clarified that plaintiffs "cannot avoid § 3730(b)(5)'s jurisdictional bar by merely adding details . . . to the material allegations." *Branch*, 560 F.3d at 373.

In sum, the Court finds that the Government in investigating *Girard* would have been led to knowing "the essential facts of [the] fraudulent scheme" professed in Plaintiff's Complaint. *See id.* (quoting *LaCorte*, 149 F.3d at 234). More importantly, the Government would likely have had

---

[33] *See* Def.'s Reply 4, ECF No. 22
[34] *See generally*, Pl.'s Resp. Opp'n Def.'s Mot. Dismiss 5-8, ECF No. 120.

"enough information to discover [the] related fraud." *Id.* The Court admits there are some new—and different—facts alleged in Plaintiff's complaint not raised in *Girard*; and the parties do not dispute that.[35] But Defendant persuasively summarizes that both complaints allege the same "type of wrongdoing," specifically "company-wide derelictions in violation of the [FCA]" and "numerous instances of failing to comply with the mandates of [TINA]."[36] The Court finds that Plaintiff's Complaint does not allege "a different type of wrongdoing . . . based on different material facts" than what was alleged in *Girard*. Plaintiff's action here contains the same essential elements as *Girard*, in turn failing the Fifth Circuit's broad standard, and is thus barred under the first-to-file provision.

## IV.   CONCLUSION

For the reasons explained, the Court **GRANTS** Defendant's Motion to Dismiss under Rule 12(b)(1). Accordingly, the Court **DISMISSES** this action without prejudice. All other pending motions are otherwise **DENIED**. Separate final judgment shall issue.

**SO ORDERED** on this **16th day** of **July 2024**.

_Reed O'Connor_
**UNITED STATES DISTRICT JUDGE**

---

[35] *See* Def.'s Mot. Dismiss 15, ECF No. 101 (conceding that "[Plaintiff's] Complaint includes different or additional details"); Pls.' Opp'n Def's Mot. Dismiss 7, ECF No. 120 (noting that "none of the [F-16, F-22, and C-130] aircraft are at issue in Girard's case").
[36] Def.'s Reply 4, ECF No. 122 (quoting Mot. to Recons. Random Assignment 2, ECF No. 24) (alterations in original).