# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 9, 2026

Lyle W. Cayce
Clerk

―――――――――

No. 24-10713

―――――――――

UNITED STATES OF AMERICA, *ex rel*, MARIA DEL CARMEN
GAMBOA FERGUSON, *Individually*,

*Plaintiff—Appellant*,

*versus*

LOCKHEED MARTIN CORPORATION,

*Defendant—Appellee*.

―――――――――――――――――――――

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:24-CV-25

―――――――――――――――――――――

Before JONES, GRAVES, *Circuit Judges*, and RODRIGUEZ, *District Judge*.[*]

JAMES E. GRAVES, JR., *Circuit Judge*:

Maria Del Carmen Gamboa Ferguson alleges that while she was employed at Lockheed Martin as the Director of Internal Audit and Senior Manager for the Subcontract Audit group, she discovered fraud across multiple military aircraft programs. Accordingly, she brought a *qui tam*

―――――――――――――――――

[*] United States District Judge for the Southern District of Texas, sitting by designation.

No. 24-10713

lawsuit pursuant to the False Claims Act (FCA). The district court dismissed Ferguson's suit after concluding it lacked subject matter jurisdiction because the FCA's first-to-file bar applied. We REVERSE and REMAND.

I.

Lockheed Martin is under contract with the United States Department of Defense to provide complex aircraft. To meet its obligation, Lockheed subcontracts with hundreds of corporations that provide the parts, which Lockheed then assembles.

As a defense contractor, Lockheed must follow certain laws and regulations. *See, e.g.*, Truth in Negotiations Act (TINA), 10 U.S.C. § 2306a *et seq.*;[1] the Federal Acquisition Regulation (FAR), 48 C.F.R. § 1.000, *et seq.*; Defense Federal Acquisition Regulation Supplement (DFARS), 48 C.F.R. § 201, *et seq.*

TINA requires disclosure of "cost or pricing data," meaning "all facts that, as of the date of price agreement . . . a prudent buyer or seller would reasonably expect to affect price negotiations significantly." 10 U.S.C. § 2306(a)(h)(1). FAR and DFARS implement TINA requirements through regulations. FAR, *inter alia*, requires contractors to submit "certified cost or pricing data" and "appropriate cost or price analyses to establish the reasonableness of proposed subcontract prices." 48 C.F.R. §§ 15.404-3(b), 15.406.2, 15.406.3. DFARS mandates, *inter alia*, that contractors "establish and maintain an acceptable purchasing system" and "document negotiations." *Id.* § 252.244-7001(b). Through these

---

[1] TINA was recodified as the Truthful Cost or Pricing Data Act, 41 U.S.C. § 35. Both parties cite the version in effect at the time the events of this case transpired. As do we.

No. 24-10713

regulations, the Government tries to effectuate its goal of purchasing services and materials at "fair and reasonable prices." *Id.* § 15.402(a).

To ensure this regime has teeth, the FCA imposes liability on "any person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to a United States officer or employee. 31 U.S.C. §§ 3729(a)(1)(A), 3729(b)(2)(A)(i). As part of the scheme, relators can bring civil *qui tam* actions in the name of the Government. *Id.* § 3730(b). At that point, the Government chooses whether it would like to intervene. *Id.* § 3730(b)(4). But "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." *Id.* § 3730(b)(5). This is known as the first-to-file bar.

At issue here: the district court concluded that the first-to-file bar applies to Ferguson's claim because it "contains the same essential elements" as a *qui tam* action previously brought by another relator, Girard. The district court accordingly dismissed Ferguson's suit for want of subject matter jurisdiction.[2]

## II.

"When addressing a dismissal for lack of subject matter jurisdiction, we review application of law *de novo* and disputed factual findings for clear error." *U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376

---

[2] As the district court found grounds for granting the 12(b)(1) dismissal, it did not address Lockheed's Rule 12(b)(6) motion. Of course, this court "may affirm on any ground supported by the record, including one not reached by the district court." *Morales-Garza v. Lorenzo-Giguere*, 277 F. App'x 444, 445–46 (5th Cir. 2008) (citing *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)). But it need not do so. *Breaux v. Dilsaver*, 253 F.3d 533, 548 (5th Cir. 2001). We decline to perform the fact-intensive sufficiency review without the aid of any reasoning from the district court.

No. 24-10713

(5th Cir. 2009) (citation omitted). The plaintiff bears the burden of establishing subject matter jurisdiction. *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012).

## III.

### A.

The FCA permits "suits by private parties on behalf of the United States against anyone submitting a false claim to the government." *Branch Consultants*, 560 F.3d at 376 (citation modified). The FCA's *qui tam* provisions encourage suits from whistleblowers with "genuinely valuable information," while discouraging "opportunistic plaintiffs from filing parasitic lawsuits that merely feed off previous disclosures of fraud." *Id.*

In balancing these goals, the FCA imposes limits. One is found in 31 U.S.C. § 3730, "Section 3730(b)(5) bars a plaintiff from bringing 'a related action based on the facts underlying [a] pending action.'" *Id.* at 377. "[T]he applicability of § 3730(b)(5) should be determined under an 'essential facts' or 'material elements' standard. Accordingly, as long as the later-filed complaint alleges the same material or essential elements of fraud described in a pending *qui tam* action, § 3730(b)(5)'s jurisdictional bar applies."[3] *Id.* at 378.

---

[3] The Ninth Circuit recently stated: "Five of our sister circuits agree that the FCA's first-to-file rule is not jurisdictional." *Stein v. Kaiser Found. Health Plan, Inc.*, 115 F.4th 1244, 1246 (9th Cir. 2024) (en banc) (citing cases from the First, Second, Third, Sixth, and D.C. Circuits). It noted that "[t]hree other circuits have held that the first-to-file rule is jurisdictional." *Id.* at 1247 (citing the Fourth, Fifth, and Tenth Circuits). It also noted that the cases in the Fourth, Fifth, and Tenth Circuits "predate the Supreme Court's reinvigoration of the clear-statement rule and did not engage in any independent analysis of the jurisdictional question," before concluding that "there simply is no meaningful

No. 24-10713

"[A] relator cannot avoid § 3730(b)(5)'s first-to-file bar by simply adding factual details or geographic locations to the essential or material elements of a fraud claim against the same defendant described in a prior compl[ai]nt." *Id.* "Any construction of § 3730(b)(5) that focused on the details of the later-filed action would allow an infinite number of copycat *qui tam* actions to proceed so long as the relator in each case alleged one additional instance of the previously exposed fraud. This result cannot be reconciled with § 3730(b)(5)'s goal of preventing parasitic *qui tam* lawsuits." *Id.*

"When deciding whether the first-to-file bar applies, this Court compares the complaints." *U.S. ex rel. Smart v. Heath*, 563 F. App'x 314, 315 (5th Cir. 2014) (citing *Branch Consultants*, 560 F.3d at 378); *accord U.S. ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 121 (D.C. Cir. 2015) ("Similarity is assessed by comparing the complaints side-by-side . . . ."); *United States v. Millenium Lab'ys, Inc.*, 923 F.3d 240, 253 (1st Cir. 2019) ("We apply the essential facts test by comparing Cunningham's amended complaint and McGuire's original complaint."); *Cho on behalf of States v. Surgery Partners, Inc.*, 30 F.4th 1035, 1043–44 (11th Cir. 2022) ("But when comparing the Relators' complaint side-by-side with the Ashton complaint . . . ."). "The focus is on whether an investigation into the first claim would uncover the same fraudulent activity alleged in the second claim." *United States v. Planned Parenthood of Hou.*, 570 F. App'x 386, 389 (5th Cir. 2014) (per curiam) (citing *Branch Consultants*, 560 F.3d at 378).

––––––––––––––––––––––––––––––

authority supporting the conclusion that the FCA's first-to-file rule is jurisdictional." *Id.* We need not reach that question to resolve this dispute, so we do not.

No. 24-10713

## B.

The district court thought that the distinctions between Girard's and Ferguson's complaints "are mostly irrelevant to the issue at hand." It then walked through six points of analysis to reach the conclusion that despite their differences, the complaints shared the same essential elements.

Though correct on several fronts, the district court inappropriately overgeneralized as it compared the two complaints' allegations. True, both complaints allege TINA and FAR violations related to overbilling the Government. But contrary to the district court's holding, reviewing the complaints demonstrates that Girard's and Ferguson's complaints do not allege the same scheme. Girard alleges a scheme where Lockheed overbilled the Government by ordering equipment in bulk at a discounted price but charging the Government the full, per-unit price. In contrast, Ferguson alleges a different scheme: that Lockheed "willfully and systematically ignored that the cost and pricing data many of its subcontractors submitted was fraudulently inflated." We address the district court's points one by one to show its fundamental misconception.

### i.

First, the district court concluded that Ferguson's "argument regarding order of proof attempts falls flat. The order of proof may be different, but a difference in the order of proof does not give rise to a different 'type of wrongdoing.'" Acknowledging that the two cases "may require different orders of proof," the district court said its "focus point [wa]s that both cases involve the same allegations of fraud," namely that "Defendant fraudulently overcharged the government in regard to its aircraft programs."

The caselaw supports the emphasis on the type of fraud, instead of the orders of proof. But the conclusion that both cases involve the same allegations of fraud misses the mark. The district court focused on what the

6

No. 24-10713

violation was—overcharging—but did not account for the mechanism or scheme of the fraud. In other words, the district court seemed to paint with too broad a brush. A review of our relevant caselaw shows this.

In *Branch Consultants*, we concluded that the first-to-file bar applied because the second relator merely added details, geographic locations, and wrongdoers. 560 F.3d at 378. The first complaint alleged State Farm "reallocated claims on two Mississippi properties from wind damage to flood damage in a pernicious attempt to shift its costs to the federal fisc." *Id.* The second complaint "brought identical allegations against State Farm, except it also alleged facts concerning ten properties in neighboring Louisiana." *Id.* But this case is not like *Branch Consultants*. Here, we do not have "identical allegations" describing the same scheme, i.e, both alleging fraud by changing claims from wind damage to flood damage.

Nor is this case like *Planned Parenthood*. There, the first complaint "alleged that Planned Parenthood fraudulently billed Title XIX Medicaid as well as other federal and state programs, but did not specifically mention any particular Medicaid programs." *Planned Parenthood*, 570 F. App'x at 389. The second complaint "specifically alleged that Planned Parenthood falsely billed the [Texas Women's Health Program]." *Id.* We concluded that,

> [B]ecause both the . . . complaints allege that Planned Parenthood's billing practices caused them to fraudulently receive funding from United States and Texas Medicaid programs, it is likely that an investigation into the allegations contained in Reynolds' complaint would have uncovered the same fraudulent activity alleged by Johnson's complaint, especially given that the TWHP is a federally-funded Texas Medicaid program.

*Id.* We reasoned that despite one complaint alleging billing for medical services not performed and the other for services performed but improperly coded, "both complaints essentially allege that fraud was committed by

7

No. 24-10713

altering patient records and billing Medicaid programs for services other than those rendered, and the additional, specific facts added by Johnson are not sufficient to make the alleged fraudulent activity sufficiently distinct to avoid the first-to-file bar." *Id.* at 390.

The same is not true here. Reviewing Lockheed's margins on parts bought in bulk and sold to the Government at a marked-up price does not naturally lead to uncovering inflated pricing data based on subcontractors overbilling their hours. Girard's complaint would likely bar another complaint that showed the bulk-discount scheme, i.e., "the same fraudulent activity" was used in "related programs" other than the F-35 JSF program. *Id.* That is, Girard put the Government on notice that Lockheed is using bulk-discount schemes to improperly drain the public fisc. It is unclear how this extends to *different* fraudulent activity—submitting proposed rates that included incomplete cost and pricing data that hid the fact that labor hours and cost were lower without any verification—that would be uncovered by reviewing different documents: cost-pricing memoranda instead of the purchase orders and invoices the Government would look at in *Girard*.

In *Smart*, this court applied the first-to-file bar, concluding that "[a]lthough both complaints allege[d] claims under the FCA, the underlying allegations of fraud in the complaints do not allege violations of the same statutes." 563 F. App'x at 315. One complaint alleged "that the hospital committed billing fraud by improperly using inpatient codes for outpatient procedures in order to obtain more money . . . in violation of the Texas Medicaid Fraud Prevention Act." *Id.* In contrast, the other complaint did not deal with the Act and "alleged that Christus rented office space at below-market rates to induce doctors to refer patients to its hospitals in violation of the Anti-Kickback Statute and the 'Stark Law.'" *Id.* (internal citations omitted). Because the *Smart* panel focused on the fact that the alleged violations were of different statutes, this case is distinguishable. But

No. 24-10713

the facts demonstrate that the schemes at issue in *Smart* employed different mechanisms to overcharge; this draws a closer parallel to this case and suggests the first-to-file bar should also not apply here.

Sure, our scant caselaw is not terribly helpful here because it does not address the heart of the question: what level of granularity should we be looking at when comparing complaints to see if they are based on the same essential facts? The decisions of our sister courts, however, more explicitly lead to the same result: not applying the first-to-file bar.

For example, in *Heath*, the D.C. Circuit concluded that the first-to-file bar did not apply because "comparative analysis demonstrate[d] that [the] two complaints target factually distinct types of frauds." 791 F.3d at 121. The first complaint alleged fraud "through affirmative misrepresentation . . . in which those employees openly denied the existence of a state contract with a lower corresponding price." *Id.* The second alleged fraud was "accomplished not through affirmative misrepresentations about the lowest corresponding price, but through institutionalized disregard of the lowest-corresponding-price requirement altogether." *Id.* "The fraud thus manifested itself in sufficiently distinct ways in the two cases that the material elements of the fraud differ." *Id.* at 122.

So too here. The bulk-discount scheme was Lockheed affirmatively representing to the Government that the price of the parts was higher than what Lockheed actually paid in one program, whereas the subcontract-accounting scheme demonstrates a disregard for Lockheed's duty to ensure that its subcontractor's cost and pricing data was accurate across several programs. If anything, the schemes here seem more disparate than in *Heath*.

In *Millenium Laboratories*, the First Circuit concluded that the second complaint's allegations did "not cover the essential elements of the fraud"

9

No. 24-10713

described in the first. 923 F.3d at 254. There, the second relator argued that "he was the first to file a claim against [Millenium] for excessive and unnecessary drug testing." *Id.* at 253. The First Circuit disagreed, saying "this is too general an argument," and instead courts "must look to the actual mechanism (the 'essential facts') of the fraud." *Id.* Looking at the actual mechanisms, the court concluded they were different. One complaint alleged a scheme where Millenium persuaded physicians to execute "custom profiles," e.g., ordering a battery of ten confirmatory tests on all urine samples, regardless of whether the original testing showed a need. *Id.* at 246. The other complaint alleged a scheme where the Government was billed for multiple tests despite there being a single "point-of-care cup." *Id.* at 253. True, the overall claim is the same: overbilling the Government. But the "how" also matters. That applies with equal force here.

ii.

Second, the district court dismissed "Plaintiff's argument regarding key documents" as "irrelevant" because "mere differences in what Plaintiff qualifies as 'key' documents do not demonstrate that the Government, in potentially investigating *Girard*, would not have been led to the fraud alleged in Plaintiff's Complaint." The district court said "that such documents would have likely found themselves within the government's purview stemming from a competently completed investigation of *Girard*."

Certainly, what Ferguson says is "key" is irrelevant. But we are unconvinced that the Government would have reached the relevant documents because the subcontractor scheme is a "different form of fraud, and without [Ferguson's] information the Government might not have investigated beyond" Lockheed Martin's bulk-billing scheme. *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1131–32 (9th Cir. 2015) (en banc). It is reasonable to expect that a competent investigation

10

No. 24-10713

would unearth other bulk-billing if it occurred in other aircraft programs, but not necessarily unearth another scheme that turned on a different type of price manipulation that the first *qui tam* action failed to give the Government any notice of. In this specific case, for the Government to have that notice, the first complaint would have had to include additional "essential facts" that pointed to the subcontractor, limited-oversight scheme and the concealment of historical cost and pricing data. That counsels against applying the first-to-file bar.

This case is also distinguishable from the cases where courts have applied the first-to-file bar.

Much like in *Branch Consultants*, in *United States ex rel. Carson v. Manor Care*, the Fourth Circuit concluded that "[n]either [] factual additions nor the fact that his experience took place in [a different state] saves him from the first-to-file bar." 851 F.3d 293, 304 (4th Cir. 2017). The second complainant tried to differentiate himself by arguing that he was "the sole relator" to bring up improper billing based on "modalities like electric stimulation, diathermy, and ultra sound to inappropriate patients." *Id.* This was not enough because the first relator already addressed the same scheme, albeit different specific treatments. *Id.* Ultimately, the earlier-filed complaint's allegations of the scheme provided the Government with enough knowledge of essential facts of the scheme to discover that related fraud. *Id.* But as noted above, Ferguson does not merely tack on another modality of the same scheme but alleges an altogether different scheme.

Nor is this case like *United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, 750 F.3d 111 (1st Cir. 2014). There "[t]he overlaps among the two complaints were considerable: the same defendants, the same drugs, the assertion of nationwide schemes, and the allegations of specific mechanisms of promotion common to both and leading to common patterns of submission

11

No. 24-10713

of false claims under the federal Medicaid program." *Id.* at 118. Here the second complaint is against the same defendant, but different programs other than one that overlaps. And the second complaint asserts a different scheme across several programs with a different mechanism.

Nor is it like *United States ex rel. Heineman-Guta v. Guidant Corp.*, 718 F.3d 28 (1st Cir. 2013), where the second complaint "merely echoe[d] the alarm sounded by" the first with additional details. *Id.* at 38. There, both contained the same essential facts of a singular scheme premised on using various forms of kickbacks (in similar kickback schemes) to induce physicians and hospitals to use its products and submit false claims to obtain reimbursement from the Government. Nor like *Cho*, where similar kickback programs were described by both complaints, with one merely naming an additional defendant. 30 F.4th at 1043–44. Nor like *United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163 (2d Cir. 2018), where both alleged a scheme where a contractor "provided free cataract surgery recovery kits to induce increased use of [its] products." *Id.* at 169. Nor like *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276 (10th Cir. 2004), where the second complaint alleged additional facts about how natural gas was being mismeasured after the first already alleged the mismeasurement scheme was occurring. *Id.* at 1280. Nor like *U.S. ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204 (D.C. Cir. 2011), where one relator "focused on the fabrication of oral forbearance requests" while the other "focused on the offering of forbearances to unqualified borrowers." *Id.* at 1209. Ultimately, the court concluded the "complaints allege essentially the same corporation-wide scheme. The [first] Complaint would suffice to equip the government to investigate [the contractor's] allegedly fraudulent forbearance practices nationwide." *Id.*

Here, not only are the facts different, but so are the schemes. Moreover, there does not seem to be much overlap in material facts (other than one aircraft program using both schemes). Thus, investigating the bulk-

No. 24-10713

billing scheme does not give the Government enough knowledge of the essential facts of the subcontractor-inflating-price scheme to reach the other form of fraud.

### iii.

Third, the district court "cursorily dismissed" "Plaintiff's point that different violations of the FAR alleged here are not alleged in *Girard*." The district court appropriately distinguished *Smart*, where there were allegations of different statutes altogether, from this case, where the violations are of the same statute and regulations, albeit different sections.

But its next step was conclusory; the district court concluded that because both allege violations of the same statutes, "specifically 'TINA violations' that 'fraudulently induced the government to contract at an inflated price,'" "the allegations of fraud in the two complaints are still considered to have the same elements." But that conclusion does not necessarily follow. In *Millenium Laboratories*, both complaints alleged excessive and unnecessary drug testing in violation of the Stark Law and Anti-Kickback Statute. 923 F.3d at 252–54. Yet, the *Millenium Laboratories* court concluded that notice of one type of kickback scheme did not give the Government enough essential facts to unearth a *different* kickback scheme. *Id.* at 254.

### iv.

Fourth, the district court found "Plaintiff's argument regarding different witnesses" to be "questionably relevant at best. Undoubtedly, two complaints can involve the same material facts and essential elements but involve completely different witnesses." That is true. But, of course, that is neither here nor there, as dismissal of Ferguson's case does not turn on this one faulty argument.

13

No. 24-10713

### v.

Fifth, the district court was "not persuaded" by Ferguson pointing out that *Girard* did not address the F-16, F-22, and C-130 aircraft programs named in her complaint. There is no doubt that the "mere addition of a few additional aircraft programs is not sufficient to separate and distinguish" a second-filed complaint from the first. *See Branch Consultants*, 560 F.3d at 378 ("[A] relator cannot avoid § 3730(b)(5)'s first-to-file bar by simply adding factual details or geographic locations to the essential or material elements of a fraud claim against the same defendant described in a prior compl[ai]nt."). And the district court is right to say that "[t]he Government, in investigating the alleged fraud regarding the F-35 contracts, would naturally have been led the 'same type of fraud' alleged regarding the F-16, F-22, and C-130 aircraft programs, or any other one of Defendant's many aircraft programs." But once again, we are brought back to our initial and central question: is Ferguson merely adding details about other programs where the *same* fraud is occurring or is she bringing up *different* types of fraud? We conclude no; different schemes demonstrate different types of fraud.

### vi.

Sixth, the district court looked at how applying the first-to-file bar serves the bar's purposes, and concluded that Ferguson's claims were "duplicative in the sense that they do not help reduce fraud or return funds to the federal fisc." In its view, "in whole, both actions allege that Defendants failed to provide mandated, relevant cost or pricing information of its subcontractors, or failed to provide accurate, complete, and current cost or pricing information."

But all TINA violations will necessarily turn on inadequate disclosures of cost and pricing information. That cannot be enough to stop all other complaints against a defendant. Ferguson's claim is not a mere

No. 24-10713

"piggyback claim[]" that "would have no additional benefit for the government"—the kind of claim the first-to-file rule aims to bar. *Hartpence*, 792 F.3d at 1131 (quoting *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001)). Instead, the complaint alleges a distinct fraud claim and allowing it helps the Government uncover and fight fraud. Ferguson is not a "bounty hunter[] piling into the first-filed suit and fighting over the division of the spoils." *Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 532 (7th Cir. 2008). Thus, it is unnecessary to discourage an opportunist who would enrich herself by pursuing fraud the Government already knows about. *See Cho*, 30 F.4th at 1041. Ferguson "provided information about a different form of fraud, and without that information the government might not have investigated beyond" Lockheed's bulk-billing scheme. *Hartpence*, 792 F.3d at 1131–32. "[A]lthough it is true that increasing the class of potential *qui tam* claimants reduces the potential incentive for any individual plaintiff to bring suit, allowing claims for related but distinct fraud claims encourages broader investigation and increases the total potential for recovery." *Id.* at 1131 (citing *Lujan*, 243 F.3d at 1189). Given that, barring Ferguson's claims does not serve the purposes of the FCA's first-to-file bar.

## IV.

In sum, this case is more analogous to the cases where a second relator files a complaint that alleges a violation of the same statute but alleges a different scheme or method of perpetrating the fraud. Ferguson does not merely add details or different locations where the fraud was perpetrated, but alleges a different mechanism. Thus, the first-to-file bar does not apply. Accordingly, we REVERSE the district court's 12(b)(1) dismissal of Ferguson's complaint and REMAND for further proceedings consistent with this opinion.

No. 24-10713

FERNANDO RODRIGUEZ, JR., *District Judge*, concurring in the judgment:

I agree with the majority opinion that the first-to-file bar does not prevent Maria del Carmen Gamboa Ferguson's lawsuit against Lockheed Martin Corporation under the False Claims Act. As a result, I concur in reversing the dismissal of Ferguson's causes of action and remanding the matter to the district court. I write separately to explain the rationale that leads me to that conclusion, as well as to address whether Ferguson's representations in a specific motion controvert her current arguments.

## I

The issue before us concerns the application of the first-to-file bar related to *qui tam* lawsuits under the False Claims Act. The doctrine arises when a relator pursues a *qui tam* lawsuit purportedly encompassed by a previously-filed action. Here, the analysis requires a detailed comparison of the complaints by Girard and Ferguson, of which a summary follows.

## A

In February 2017, Patrick Girard filed a lawsuit based on the False Claims Act against his former employer, Lockheed. *See United States ex rel. Girard v. Lockheed Martin Corporation*, Civil Case No. 4:17-147 (E.D. Tex.). Girard alleged that in response to a General Accounting Office report raising concerns about increasing costs in the F-35 Joint Strike Fighter ("JSF") aircraft program, Lockheed, Pratt & Whitney, and the Department of Defense collaborated to create a "JSF Cost War Room" to reduce expenses. At the time, Girard worked for Lockheed as a policy pricing staffer and, in that position, actively participated in the JSF Cost War Room efforts.

As part of his contribution, Girard compared historical proposed costs and pricing versus Lockheed's actual costs and pricing. He noticed that Lockheed would purchase parts in "lot buys" to obtain price reductions, but

16

No. 24-10713

would present those costs to the government as if Lockheed had procured the parts at a higher, per unit amount. For example, Lockheed might require the same hardware for three different bases. It would purchase the hardware in a single order to receive a reduced price, but would present the cost to the government as if Lockheed had conducted three separate purchases for the parts, with each purchase at a higher per-unit rate. In addition, Girard alleged that several Lockheed employees told him that the company would purchase hardware "not required by the current contract" and would hold it "as inventory to use in the next contract[,]" to maximize the bulk purchase discounts, even though Lockheed would charge the government the "small-order per-unit prices." Although Lockheed worked with subcontractors, Girard did not allege that any subcontractor knowingly facilitated or conspired in the alleged wrongdoing. According to Girard, Lockheed purchased hardware at 20 to 30 percent below the amount charged to the government, for a total overbilling of at least $70 million.

Girard shared his findings with various supervisors at Lockheed, none of whom took any remedial action. Instead, Lockheed fired him in December 2015, an action that he claims stemmed from his reports.

After his termination, Girard filed his *qui tam* lawsuit, alleging that Lockheed's conduct violated the Truth in Negotiations Act (TINA) and Federal Acquisition Regulation (FAR) by knowingly submitting false cost and pricing data to the government.

B

In February 2020, Ferguson filed her lawsuit against Lockheed, also based on the False Claims Act and alleged violations of TINA.

Ferguson was an auditor for Lockheed, supervising audits of the company's subcontractors. She worked on prime contracts, through which Lockheed assembled and integrated parts, subsystems, and software that

17

No. 24-10713

subcontractors supplied. As a prime contractor, Lockheed bore the responsibility to audit the cost and pricing data of its subcontractors to ensure no overcharging of the government.

In her complaint, Ferguson alleges that subcontractors on multiple aircraft programs–i.e., the C130J Hercules, the F-35 JSF, the F-22 Raptor, and the F-16 Fighting Falcon–deliberately inflated their labor costs. According to Ferguson, Lockheed not only refused to hold these subcontractors accountable, but benefited from the false reporting. As Lockheed's profit from the government contracts was awarded as a percentage of the overall value of the contract, the company's profit grew as the total costs, including for labor, increased.

For example, in connection with the C130J Hercules, Lockheed worked with TATA, an Indian company. TATA's employees allegedly clocked in on the C130J Hercules program, but then worked on unrelated projects in a different facility. Lockheed included the "fictitious cost data on labor hours" in its cost analysis to the government. Ferguson alleges that in 2013, TATA's actual hours spent on the C130J Hercules program were "less than half" of the hours that Lockheed incorporated into its contract proposal.

Ferguson alleges similar fraudulent conduct related to inflated labor costs on other aircraft systems. For the F-35 JSF, Lockheed's subcontractor, Kirkhill, allegedly "inflat[ed] F-35 overhead pools with company-wide shared overhead expenses, and us[ed] un-allocable standard labor hours that were 50% higher than the actual labor hours." The subcontractor Korean Aerospace Industries, which worked with Lockheed on the F-35 JSF, the C140J Hercules, and the F-16 Fighting Falcon, imposed significant restrictions on the scope of audits, allegedly to prevent the discovery of inflated direct labor rates. In connection with helmet mount display systems for the F-35 JSF, Ferguson claims that Lockheed enabled the supplier, Elbit

18

No. 24-10713

Systems Haifa, "to cover-up the fact it was fraudulently inflating its direct labor rates, to the result of millions of dollars of overcharges." And in relation to the F-16 Fighting Falcon, Lockheed allegedly knew that the Taiwanese subcontractor for the retrofitting of the aircraft inflated its direct labor costs by having employees log work on the contract even during their lunch breaks. The subcontractor also purportedly used low wage technicians for certain tasks, but Lockheed charged the government as if higher-wage employees performed the work.

In sum, Ferguson alleges that Lockheed knowingly incorporated inflated labor costs in its proposals to the Government, resulting in increased profits to Lockheed.

C

In 2016, Ferguson filed three *qui tam* actions against Lockheed in the Northern District of Texas, which the court consolidated into a single lawsuit.

The following year, Girard filed his lawsuit in the Eastern District of Texas, and the matter was assigned to Judge Amos L. Mazzant.

The Government declined to intervene in Ferguson's lawsuit in 2019, and she voluntarily dismissed her case. The following year, she re-filed her action in the Eastern District of Texas, and it was assigned to Judge Sean Jordan.

After the Government again declined to intervene and the court unsealed the lawsuit, but before Lockheed appeared in the matter, Ferguson moved to have her case re-assigned to Judge Mazzant, who was still presiding

19

No. 24-10713

over Girard's action, which remained sealed.[1] Ferguson requested the transfer because "efficiency, consistency, fairness, and justice [would] be served" by having Judge Mazzant preside over both actions. Ferguson acknowledged that the two lawsuits were "substantially related" and would present "very similar legal issues and discovery disputes[.]" She contended that having the same judge adjudicate both matters "would allow the Court and the parties to utilize to full advantage these commonalities and the Government's investigations, allowing the Court to take advantage of economies inherent in assigning related cases to a single district judge, to ensure consistent results in very similar cases, to prevent manipulation of the common defendant's capacity to try and/or settle one or both cases to the unfair disadvantage of the Government, and to ensure that the district judge presiding over both cases is aware of the other case's history and processing at any fairness hearing on a proposed settlement in either case."

While recognizing the "parallel" nature of the actions, Ferguson made clear that the lawsuits involved different "alleged failures[.]" As a result, Ferguson did not request consolidation of the matters, and she expressly denied that her lawsuit implicated the first-to-file bar under the False Claims Act.

The district court granted the motion and the matter was re-assigned to Judge Mazzant.

Lockheed then appeared in the lawsuit. The company did not request consolidation with the Girard qui tam action, and subsequently moved to transfer the case back to the Northern District of Texas. In its motion, Lockheed argued that none of the parties resided in the Eastern District and

---

[1] Ferguson knew of Girard's lawsuit because her counsel also represented Girard and she served as a consultant in that matter.

No. 24-10713

that many of the key witnesses and much of the evidence were within the Northern District. In addition, based on Ferguson's description of Girard's lawsuit as "substantially related," Lockheed alternatively argued that the court should dismiss the action for want of jurisdiction, based on the first-to-file bar. The court granted the motion to transfer the lawsuit back to the Northern District.

Lockheed next moved for dismissal of Ferguson's causes of action on two grounds. First, Lockheed again presented its argument that Girard's lawsuit deprived the court of jurisdiction under the first-to-file bar. Second, Lockheed moved for dismissal under Federal Rule of Civil Procedure 12(b)(6).

In her response to the motion, Ferguson principally argued that five factors demonstrated that the first-to-file bar did not preclude her lawsuit. According to Ferguson, the two complaints concerned differing orders of proof, evidentiary documents, violations of FAR, witnesses, and aircraft contracts.

The district court granted the motion to dismiss, explaining that this Court had applied the first-to-file bar broadly, and finding that Girard's and Ferguson's complaints involved the same material elements of fraud–namely, that "'company-wide derelictions in violation of the [FCA]' and 'numerous instances of failing to comply with the mandates of [TINA].'"

Ferguson timely appealed the decision.

## II

### A.

"The False Claims Act prohibits, in relevant part, 1) the presentment of a false claim to the Government, 2) the use of a false record or statement to get a false claim paid, and 3) conspiracies to get a false claim paid." *U.S.*

21

No. 24-10713

*ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 184 (5th Cir. 2009). "To aid the rooting out of fraud, the Act provides for civil suits brought by both the Attorney General and by private persons, termed relators, who serve as a 'posse of ad hoc deputies to uncover and prosecute frauds against the government.'" *Id.* at 184. In these civil actions, known as *qui tam* lawsuits, a private person sues on behalf of the Government and, if successful, recovers a percentage of any recovery made on behalf of the Government. *Id.*; *see also U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009) (explaining that whistleblowers "act as private attorneys general in bringing suits for the common good").

The False Claims Act contains an important limitation known as the first-to-file bar. Once an individual files a qui tam lawsuit, no other person "may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). The first-to-file bar is designed to create "a race to the courthouse among eligible relators, which may spur the prompt reporting of fraud." *Branch Consultants*, 560 F.3d at 377 (quoting *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998)). Simultaneously, the doctrine "discourage[s] opportunistic plaintiffs from filing parasitic lawsuits that merely feed off previous disclosures of fraud." *Branch Consultants*, 560 F.3d at 376. To accomplish these goals, courts apply the doctrine broadly. *Id.* at 377.

"An 'essential facts' or 'material elements' standard" governs the analysis. *Id.* at 378. "[A]s long as the later-filed complaint alleges the same material or essential elements of fraud described in a pending qui tam action, § 3730(b)(5)'s jurisdictional bar applies." *Id.* Courts employ the first-to-file bar on a "claim-by-claim" basis, "consider[ing] each claim individually, separating genuinely new claims from recycled ones." *United States ex rel. Conyers*, 108 F.4th 351, 358 n.8 (5th Cir. 2024).

22

No. 24-10713

A relator cannot avoid the first-to-file bar "by simply adding factual details or geographic locations to the essential or material elements of a fraud claim against the same defendant[.]" *Branch Consultant*, 560 F.3d at 378. Adding such detail "to a previously exposed fraud does not help 'reduce fraud or return funds to the federal fisc,' because 'once the government knows the essential fact of a fraudulent scheme, it has enough information to discover related frauds.'" *Id.* (quoting *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998)); *see also U.S. ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 121 (D.C. Cir. 2015) ("Similarity is assessed by comparing the complaints side-by-side, and asking whether the later complaint alleges a fraudulent scheme the government already would be equipped to investigate based on the first complaint." (cleaned up)).

The statute and this Court's decisions reveal two critical elements in the analysis. First, courts must compare the factual allegations in the complaints to discern the nature of the claims asserted. While courts describe the standard as the "essential elements" or "material elements" test, the analysis does not involve merely determining whether both complaints invoke the same statute or can be reduced to the same elements for the alleged claims. As the False Claims Act's text renders clear, the first-to-file bar does not apply automatically to any "related action," but only to those actions "based on the facts underlying" the first lawsuit. 31 U.S.C. § 3730(b)(5). The facts need not be identical to trigger the first-to-file bar, but the facts, and not merely the elements of the causes of action, must bear some relation. *See LaCorte*, 149 F.3d at 233 ("[I]f a later allegation states all the essential facts of a previously-filed claim, the two are related and section 3730(b)(5) bars the later claim, even if that claim incorporates somewhat different details.") (cited in *Branch Consultants*, 560 F.3d at 377).

Second, a critical consideration is whether the government's investigation of the allegations in the first complaint would reasonably lead

23

No. 24-10713

to discovery of the fraudulent scheme that the second relator alleges. Thus, the addition of details or geographic locations to the facts underlying the first lawsuit does not circumvent the first-to-file bar, as the government's investigation would naturally uncover those details. Courts presume that the government's investigation will "discover *related* frauds." *Branch Consultants*, 560 F.3d at 378 (quoting *LaCorte*, 149 F.3d at 234) (emphasis added). This approach avoids "an infinite number of copycat *qui tam* actions" filed by relators who each "allege[] one additional instance of the *previously exposed fraud.*" *Id.* (emphasis added).

The government's investigation, however, will not discover *unrelated* fraudulent conduct, unless the alleged facts in the initial lawsuit bear some relation or overlap with the alleged facts of the second qui tam action. This principle holds particular weight when the alleged fraudulent schemes concern complex government contracts, such as in the present case, or elaborate statutory regimes, as in the health care arena. For example, when one relator alleged a fraudulent scheme against a defendant, and a second relator alleged the same misconduct by other companies, this Court concluded that the government's investigation of the first defendant would not have discovered the same fraudulent scheme perpetrated by other misfeasors. *Branch Consultants*, 560 F.3d at 380. And when a relator alleged fraudulent misconduct by a company's subsidiary, a sister court declined to apply the first-to-file bar as to all subsidiaries or to the parent company, as no allegations existed of a company-wide scheme. *Heath*, 791 F.3d at 122. Extending the doctrine to the entire enterprise would "inoculate large companies against comprehensive fraud liability" based solely on allegations of "isolated misconduct[.]" *Id.*

In the same way, when a relator alleges that a company violated a federal statute in a specific manner, courts do not automatically apply the first-to-file bar as to all future lawsuits based on the same statute against the

24

No. 24-10713

same defendant. Take TINA as an example. The statute imposes broad requirements, mandating that a government contractor certify that to the best of its knowledge and belief, "the cost or pricing data submitted [to the government] are accurate, complete, and current." 41 U.S.C. § 3502(b). "Cost and pricing data" includes "all facts" that "a prudent buyer or seller would reasonably expect to affect price negotiations significantly." 41 U.S.C. § 3501(a)(1). In connection with contracts for complex systems and programs, cost and pricing data encompass a wide-ranging host of transactions, both domestic and international, and voluminous data. Presuming that a government investigation of a company's alleged violation of TINA in one specified manner would reasonably discover all possible violations of TINA by that company strains credulity. The investigation should uncover related frauds based and reasonably related to the factual allegations in the first relator's complaint. But government officials investigating a specific allegation of TINA violations need not turn a company inside out seeking to unearth all possible violations of the statute. *See Branch Consultants*, 560 F.3d at 380 ("[F]orcing the government to expend its limited time and resources wading through the records of ninety-one WYO insurers in an attempt to identify specific instances of fraud would completely undermine the enforcement component of the FCA's *qui tam* provisions").

In the present case, the district court reached the incorrect conclusion as to each of these principles. First, the court found that the two lawsuits had the same essential elements because they both alleged "violations of the same statutes (albeit different sections), specifically 'TINA violations' that 'fraudulently induced the government to contract at an inflated price.'" True enough, but this statement only begins the analysis, and the district court erred by limiting the analysis to such a high level of generality. No party disputes that Girard and Ferguson advance related cases. Ferguson,

25

Case: 24-10713 Document: 119-2 Page: 26 Date Filed: 03/31/2026
Case 4:24-cv-00025-O Document 178 Filed 03/31/26 Page 26 of 34 PageID 2877

No. 24-10713

however, does not base her lawsuit on the facts underlying Girard's causes of action. She makes no allegations regarding Lockheed's purchase of parts for any of its aircraft programs. Instead, she alleges that Lockheed collaborated with subcontractors to inflate labor costs for various aircraft programs, not only for the F-35 JSF, but also in connection with other aircraft systems. At times, the focus of the alleged wrongdoing occurred overseas, such as when employees of subcontractors in India clocked in as working on the Lockheed aircraft program, but performed work on unrelated projects. Another subcontractor allegedly used "un-allocable standard labor hours that were 50% higher than the actual labor hours." One company that worked with Lockheed on the F-35 JSF, the C140J Hercules, and the F-16 Fighting Falcon, allegedly imposed significant restrictions on the scope of audits to prevent the discovery of inflated direct labor rates. And a Taiwanese subcontractor conducting work on the F-16 Fighting Falcon allegedly inflated its direct labor costs by having employees log work on the contract even during their lunch breaks. Contrary to the district court's finding, these specific facts are not mere details that supplement Girard's allegations. They describe an unrelated fraudulent scheme bearing no relation to the factual basis of Girard's claims.

Second, in light of the absence of a factual connection between the Girard and Ferguson lawsuits, a reasonable government investigator, armed with the facts described in Girard's complaint, would not have investigated labor costs by Lockheed subcontractors both in and outside of the United States. Girard makes no allegations concerning Lockheed's subcontractors or of labor costs, and an investigation of Lockheed's parts-purchasing practices would not have required an audit of the labor costs of the company's subcontractors. Moreover, Girard focuses his allegations on the F-35 JSF program. He makes no mention of the other aircraft systems that Ferguson references in her complaint.

26

No. 24-10713

Lockheed's position would require courts to infer that once a relator alleges the violation of TINA by a defendant, the government will uncover all possible violations of the statute, whether related to the allegations underlying the initial lawsuit or not. This conclusion is not only unreasonable, it also provides unwarranted protection to companies alleged to have violated TINA in a specific manner. Under Lockheed's approach, once a relator alleges any form of TINA violation by a government contractor, no other relator may bring claims of distinct TINA violations by the same defendant, even if wholly unrelated to the allegations or to the systems and programs that underlie the first complaint. Such a principle would discourage potential relators who may have knowledge of wholly-separate TINA violations based on facts unrelated to the first lawsuit, and would provide comprehensive inoculation to a company, premised only on the limited and specific allegations of one relator.

Finally, the majority opinion assesses the six factors that Ferguson identified in her briefing. I agree with that assessment, and they lend support to the conclusion that Ferguson does not base her lawsuit on the facts underlying Girard's claims. But governing caselaw does not identify those factors as dispositive or as the standard governing the analysis of the first-to-file bar. In short, such factors may prove relevant, but are not the focus of the assessment.

B

Ferguson's motion in the district court to have the case re-assigned to Judge Mazzant does not support the application of the first-to-file bar.

When moving to re-assign the case to Judge Mazzant, Ferguson argued that having the same judge adjudicate her and Girard's cases would promote "efficiency, consistency, fairness, and justice[.]" She described the cases as "substantially related" and as concerning "very similar legal issues

27

No. 24-10713

and discovery disputes." While these statements are true, they do not require the application of the first-to-file bar.

Ferguson's motion recognized the fact that both lawsuits claim that Lockheed violated TINA in its contracts with the United States. Counsel for Girard also represents Ferguson, and she served as a consultant on the Girard matter. Under these circumstances, Ferguson argued that pretrial management efficiencies could be obtained by having one judge preside over both matters. But whether cases are sufficiently related to afford pretrial management efficiencies by having the same judge preside over both of them is markedly different from whether the two complaints turn on the same essential facts or elements.

Notably, Ferguson expressly disclaimed that the two lawsuits found their basis on the same underlying facts or implicated the first-to-file bar. And she did not request that the cases be consolidated. Neither did Lockheed. Instead, Lockheed moved to transfer the case to the Northern District of Texas, which the district court granted. And even when Lockheed raised the first-to-file bar as an alternative ground for relief, it did so based on Ferguson's use of "substantially related" and similar terms in her court papers, and not on a comparison of the factual basis of both lawsuits. While Lockheed and the district court focus on some of Ferguson's specific language in her motion to re-assign the case to Judge Mazzant, her phrasing does not automatically trigger the first-to-file bar.

No. 24-10713

### III

For the foregoing reasons, I concur in the judgment remanding this case back to the district court.[2]

_____

[2] The district court did not reach Lockheed's arguments based on Federal Rule of Civil Procedure 12(b)(6), and neither do we. On remand, Lockheed may re-urge that portion of its motion to dismiss.

No. 24-10713

EDITH H. JONES, *Circuit Judge*, dissenting.

Fortunately, my colleagues and I agree that the controlling published case in this circuit concerning the first-to-file bar of the False Claims Act, 31 U.S.C. § 3730(B)(5), is *U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371 (5th Cir. 2009). We disagree on how the *Branch* test applies in this case. But at least as concerns contracts for the F-35 Joint Strike Fighter program during the period in question, approximately 2008–2018, the Ferguson complaint should be barred.

*Branch Consultants* thoroughly reviewed other circuits' authorities in reaching its holding that "the applicability of § 3730(b)(5) [the first-to-file bar] should be determined under an 'essential facts' or 'material elements' standard." *Id.* at 378. *Branch Consultants* essentially equated these standards, as its footnote 9 states: "Nothing in *Lujan* indicates that the Ninth Circuit meant the phrase 'same material elements of fraud' to be construed differently than *LaCorte*'s phrase 'all the essential facts' of the fraud . . . ." *Id.* at 378 n.9. Thus, the rule in this circuit is that if either essential facts or material elements are common to serial False Claims Act complaints, the first-to-file bar applies. *Branch Consultants* went on to hold that where a particular fraud was alleged in a first False Claims Act suit and then expanded geographically in a subsequent suit, the second suit was barred. *Id.* at 378. As the court held, the bar applies even if the later-filed complaint "incorporates somewhat different details." *Id.* at 377–78. And as *Branch Consultants* explained, "once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds." *Id.* at 378. This court's interpretation resembles the broad standard adopted by other circuits. *See, e.g., id.* at 377; *United States v. Planned Parenthood of Hous.*, 570 F. App'x 386, 389 (5th Cir. 2014).

30

No. 24-10713

Girard's and Ferguson's complaints both center on Lockheed's alleged noncompliance with (1) the Truth in Negotiations Act ("TINA")[1], 10 U.S.C. § 2306a, that applies to government contractors' pricing disclosures and (2) the Federal Acquisition Regulations ("FAR"). Those regulations require contractors to document and certify appropriate cost or price analyses to establish the reasonableness of proposed subcontract prices. Girard's complaint took aim at F-35 LRIP[2] contracts in which Lockheed allegedly purchased components in bulk to receive volume discounts from subcontractors but then fraudulently documented to the government that it had paid higher prices for small quantities. Girard placed this misconduct in the broader context of false TINA certifications and FAR violations, and he described it explicitly as a widespread scheme to conceal inflated subcontractor costs and fraudulently induce several of the F-35 contracts.

Ferguson's complaint also explicitly alleges a widespread scheme to conceal inflated subcontractor costs and fraudulently induce a number of F-35 LRIP contracts. Although Ferguson's allegations about particular contracts lack the specificity of Girard's complaint,[3] the contracts permeated by fraud and disclosure violations necessarily overlap. The schemes' details differ, because Ferguson focuses on inflated subcontractor labor costs, but the same statute and regulations are violated for identical contracts. Although Girard also pleads an "ongoing" scheme, Ferguson's complaint appears to span more years. But the government, once alerted to allegedly

_____

[1] TINA has since been renamed and recodified as the Truthful Cost or Pricing Data Act, 41 U.S.C. § 3501–3509.

[2] When aircraft have not arrived at their mature design, they are produced under Low Rate Initial Production ("LRIP") contracts to test the aircraft and assess performance.

[3] Indeed, yawning gaps in Ferguson's complaint call for close examination of the Rule 12(b)(6) motion to dismiss that we remand to the district court.

31

No. 24-10713

systemic certification violations of TINA and FAR by Girard, would necessarily have investigated other F-35 LRIP contracts.

In my view, analyzing these complaints side by side yields the same conclusion as the district court and this court in *Branch Consultants*. That case turned on a particular scheme that was employed in two different states. This case involves a scheme of false certifications that spanned various component parts in the *same LRIP contracts* for the F-35 jet aircraft; the "geography" is identical, but the details are different. Whether viewed as alleging the same "essential facts" or "material elements" as the *Girard* complaint, the Ferguson complaint should be barred.[4]

The propriety of the bar is reinforced by Ferguson's handling of her complaint over nearly six years. The filing of a False Claims Act action requires the government to investigate before the complaint is unsealed in order to determine whether it should take over the claims. Ferguson filed multiple separate complaints against Lockheed in court that instigated four

---

[4] Judge Rodriguez asserts that the second complaint must be "based on the facts underlying" the first qui tam suit. 31 U.S.C. § 3730(b)(5). From that, he insists that the *facts* must "bear some relation" to each other in the two suits. But the Fifth Circuit, construing a related section of the FCA, holds that an "action even partly based upon publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transaction." *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 451 (5th Cir. 1995) (quotation and emphasis omitted). Here, the *facts* consist of identical component contracts according to the allegations in both complaints; involvement of Lockheed management in both complaints; at least three years' overlap in the identical F-35 LRIP contracts. Consequently, differences in how the contract costs were inflated are details when the gravamen of both suits concerns repeated, systemic, management-approved false certifications about subcontractor costs. *See, e.g.*, *U.S. ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 304-05 (4th Cir. 2017) (concerning an alleged scheme to overbill for medical and physical therapy costs, the second relator cannot "avoid § 3730(b)(5)'s first-to-file bar simply by alleging additional facts relating to *how*" the fraud occurred); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1280 (10th Cir. 2004) (applying the bar where serial complaints alleging various fraudulent techniques of mismeasuring of gas produced, and differences in techniques were immaterial).

32

No. 24-10713

separate federal investigations—and four separate declinations--of her claims. Three investigations were conducted by the DOJ and U.S. Attorney for the Northern District of Texas and, after Ferguson dismissed in that venue and refiled in the Eastern District of Texas, another was conducted by the Eastern District's U.S. Attorney. A filing in the latter investigation indicated that thousands of documents were reviewed and multiple parties were questioned before the U.S. Attorney's office declined to intervene. The government's repeated refusals to take over her claims should mean something.

Equally compelling, Ferguson repeatedly referenced the similarity of her and Girard's complaints in court filings. After filing in the Eastern District, she sought reassignment to Judge Mazzant, who was assigned the *Girard* case, because her action was "a substantially related case against the same defendant." She stated that "[b]oth actions allege that Lockheed failed to provide the Government with accurate, complete and current cost or pricing information as required by [TINA] and [FAR]," and both involved "price negotiations with [DoD] across multiple procurement contracts." She described the "parallel nature of the two cases," and referenced DOJ's "parallel investigations" of Girard's and her allegations. Further, she noted DOJ's "common investigative focus [on] company-wide derelictions in violation of the [FCA], and particularly, [Lockheed Martin's] numerous instances of failing to comply with the mandates of [TINA]." In fact, Ferguson pointed out that her counsel is the same as counsel in the *Girard* case, and she herself was a "consultant" in the *Girard* case.[5] When it suited her strategy, Ferguson did not hesitate to plead against her interest in regard

---

[5]When Lockheed moved to change venue, Ferguson contended that similarities between her case and that of Girard weighed against transfer.

33

No. 24-10713

to a first-to-file bar.  Such characterizations of her and Girard's complaints should mean something.

My colleagues view these complaints through the wrong end of the telescope; they focus on details rather than on the larger commonality between the cases.  When seen in the proper perspective, it is clear that Ferguson's allegations of subcontractor miscertifications in connection with multiple F-35 LRIP contracts overlap Girard's claim in their material elements and essential facts.  A case could certainly be made for an even broader bar of Ferguson's allegations concerning contracts for the C-130J, F-16, and F-22 aircraft contracts, but those for the F-35 constitute about three quarters of Ferguson's complaint.  The first-to-file bar must apply.